IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY SESSION, 1997

FILED

September 10, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9606-CC-00189 |
| | ) | |
| Appellee, | ) | |
| | ) | CARROLL COUNTY |
| | ) | |
| V. | ) | |
| | ) | HON. C. CREED McGINLEY, |
| JAMES LEONARD CORDER | ) | JUDGE |
| | ) | |
| Appellant. | ) | (AGGRAVATED ASSAULT) |

FOR THE APPELLANT:

**GUY T. WILKINSON**
District Public Defender

**BILLY R. ROE, JR.**
Assistant Public Defender
117 North Forrest Avenue
P.O. Box 633
Camden, TN 38320

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**SARAH M. BRANCH**
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243

**G. ROBERT RADFORD**
District Attorney General

**ELEANOR CAHILL**
Assistant District Attorney General
111 Church Street
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, James Leonard Corder, was charged in an indictment returned by the Carroll County grand jury with two counts of aggravated assault against Bobbie Jo Douglas (one by use of a deadly weapon and the other by causing serious bodily injury), one count of aggravated assault upon Martha Jo Hindman, and one count of aggravated kidnapping of Bobbie Jo Douglas. All acts were alleged to have been committed on the same date. The jury found Defendant guilty of aggravated assault upon Martha Jo Hindman, guilty of aggravated assault upon Bobbie Jo Douglas by causing her serious bodily injury, and guilty of the lesser included offense of assault on the other charge of aggravated assault. The Defendant was acquitted of the charge of aggravated kidnapping. The trial court subsequently merged the misdemeanor assault conviction with the conviction of aggravated assault upon Bobbie Jo Douglas and sentenced Defendant to serve six (6) years imprisonment on both convictions of aggravated assault, to be served concurrently.

In this appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure, Defendant presents two issues: (1) The trial court erred by overruling his objection to the admission into evidence of photographs of the victim and (2) the trial court erred by denying his motion to suppress evidence seized from his van during a warrantless search. We affirm the judgment of the trial court.

On January 26, 1995, Martha Jo Hindman, an elderly lady who was normally confined to a wheelchair, and Bobbie Jo Douglas, who was the Defendant's girlfriend, were sitting in Ms. Hindman's home when the Defendant entered and began beating Ms. Douglas. Ms. Hindman tried to intervene, but Defendant threatened her with a knife, placing the knife in her face and telling her to "shut up." This scared Ms. Hindman and, in her words, she "backed off." Ms. Hindman went to another room to a telephone to call for help. The Defendant saw her, jerked the phone out of her hand and threw it on the floor. Defendant then folded her wheelchair up and threw it on the floor, grabbed Ms. Hindman and slung her over the wheelchair, and she was unable to get up.

Ms. Hindman testified that after the Defendant came in the house, he stated to Ms. Douglas, "What did you lie to me for?" He then grabbed Ms. Douglas by the hair of her head and hit her several times in the face with his fist. Ms. Douglas began to gather her belongings and the Defendant knocked her down again. Ms. Douglas began bleeding and blood was on the floor, a footstool and a blanket. In addition, the Defendant was kicking Ms. Douglas while she was on the floor. As the Defendant was taking Ms. Douglas away from the home, he told Ms. Hindman that if she told anyone what had happened, he would come back and do to her what he had done to Ms. Douglas. After a considerable period of time, Ms. Hindman finally called 911 and asked for a police officer to come and help her get up. Being fearful of the Defendant and his threats, Ms. Hindman told the officer that she had accidentally fallen out of the chair. Subsequently, being concerned of Ms. Douglas' well-being due to the extent of her injuries, she called the police the next day and reported the incident.

The proof showed that the Defendant resided in Benton County. Officers of the Benton County Sheriff's Department went to the Defendant's residence and found both the Defendant and Ms. Douglas. Pictures were taken of Ms. Douglas as she was found at the Defendant's residence and as she appeared at the hospital in Camden on January 27, 1995.

To say that Ms. Douglas was a reluctant witness at the trial is to understate the situation. She testified on direct examination when called by the State that she could not remember the events which had occurred at Ms. Hindman's home, even though the record reflects that she apparently had a good memory of the events during the preliminary hearing in General Sessions Court on February 9, 1995. During cross-examination, Ms. Douglas testified that she had spoken with the Defendant over the phone and he said that if he ever got out of this he would "never do it no more." He apologized to her and she stated that she had written to him and made phone calls to him since the incident had occurred. In summary, Ms. Douglas testified that "[Defendant] don't need to be -- he's spent enough time in jail for what he has done . . . I think he has been punished enough for what he has done."

Officers of the Benton County Sheriff's Department searched the Defendant's van on the date of his arrest on January 27, 1995. Evidence of items recovered from the van which incriminated the Defendant were introduced at trial. In addition, the Defendant made a statement to the Sheriff of Benton County that he [Defendant] wished he had just gone ahead and cut off the victim's head.

Prior to the trial, the Defendant filed a motion to suppress all evidence seized during the warrantless search of his van by the Benton County Sheriff's Department. Following a hearing, the court denied the motion. The record on appeal does not contain the transcript of the proceedings of the motion to suppress evidence.

It is the duty of the Defendant to prepare a record which includes the proceedings relevant to an issue on appeal; otherwise, the doctrine of waiver applies. T.R.A.P. 24(b); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). When the record is incomplete, or does not contain the proceedings relevant to an issue, this court must presume the trial court ruled correctly. State v. Hoosier, 631 S.W.2d 474, 476 (Tenn. Crim. App. 1982); Herron v. State, 3 Tenn. Crim. App. 39, 456 S.W.2d 873, 876 (1970). Based upon the status of the record on appeal, this court must presume that the trial court ruled correctly on the motion to suppress evidence seized from the Defendant's van. This issue is without merit.

The Defendant also filed, pre-trial, a motion in limine, requesting the trial court to enter an order prohibiting the State from introducing into evidence the photographs of the victim, Bobbie Jo Douglas. Defendant alleged in this motion, and argues on appeal, that the prejudicial effect of the photographs far outweighs the probative value. He asserts that the extent of the victim's injuries could be adequately proven through the testimony of the treating physician.

As in the case of the motion to suppress evidence, the record does not contain the transcripts of any proof presented to the trial court concerning the

motion in limine. A pre-trial hearing was apparently held and an order was entered denying the motion in limine.

Even if this issue is not waived by failure of the Defendant to include in the record proceedings in the trial court related to the motion in limine, we are able to rule that the probative value of the photographs is not outweighed by any prejudicial effect. From the record it is apparent that the photographs accurately and clearly display the injuries to the victim which support proof of serious bodily injury. The victim's treating physician testified during cross-examination by Defendant's counsel, that the photographs did not look worse than the victim's actual injuries and in fact, the photographs "looked exactly" like the injuries.

The physician further testified that the victim had massive swelling of her face with bruising, especially around her eyes, to the extent that she was unable to open her eyes. In addition, the victim had multiple bruises on her rib cage and swelling of both hands. He related that the victim did not have massive bleeding and had no broken bones. He further testified that the victim's eyes were so swollen that she would have been unable to get up and move around on her own. The photographs which were objected to by the Defendant show the victim's face with the eyes swollen shut, bruising on the face, and the swollen left hand. The photographs are not particularly gruesome.

Especially in light of the victim's inability to remember events of the aggravated assault, we conclude that the probative value of the photographs far outweighs any prejudicial effect. See State v. Banks, 564 S.W.2d 947, 951

(Tenn. 1978).  The trial court did not err in overruling the Defendant's objection to the introduction of the photographs of the victim.

Finding no error, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
GARY R. WADE, Judge

_____
JOHN H. PEAY, Judge