# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### OCTOBER 1997 SESSION

FILED

January 16, 1998

Cecil W. Crowson
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | No. 01-C-01-9612-CC-00506 |
| | ) | |
| APPELLEE, | ) | Coffee County |
| | ) | |
| v. | ) | Gerald L. Ewell, Sr., Judge |
| | ) | |
| HOLLY LACK EARLS, | ) | (Attempt to Commit Felony Murder |
| | ) | and Attempt to Commit Especially |
| | | |
| APPELLANT. | ) | Aggravated Robbery) |

FOR THE APPELLANT:

T. Arthur Jenkins
Attorney at Law
111 North Irwin Street
Manchester, TN  37355-0126
(Appeal Only)


B. Campbell Smoot
District Public Defender
605 East Carroll Street
Tullahoma, TN  37388-0260

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN  37243-0497

Lisa A. Naylor
   Assistant Attorney General
   450 James Robertson Parkway
   Nashville, TN  37243-0493

C. Michael Layne
District Attorney General
P. O. Box 147
Manchester, TN  37355

OPINION FILED: _____

AFFIRMED IN PART AND REVERSED IN PART

Joe B. Jones, Presiding Judge

O P I N I O N

The appellant, Holly Lack Earls (defendant), was convicted of criminal attempt to commit especially aggravated robbery, a Class B felony, and criminal attempt to commit first degree felony murder by a jury of her peers. The trial court found the defendant was a standard offender and imposed a Range I sentence consisting of confinement for twenty (20) years for attempted first degree murder and ten (10) years for attempted especially aggravated robbery in the Department of Correction. The trial court also imposed a $25,000 fine for each count for a total of $50,000 in fines. The trial court ordered the sentences are to be served consecutively for an effective sentence of thirty (30) years. The defendant presents two issues for review. She contends (a) the evidence was insufficient as a matter of law to convict her of attempt to commit especially aggravated robbery and attempt to commit first degree felony murder and (b) her sentence was excessive. After a thorough review of the record and the briefs submitted by the parties, it is this court's opinion the judgment of the trial court should be affirmed in part and reversed in part.

2

I.

The victim, Grover McCullough, was 82 years of age. He lived alone. The victim knew the defendant, Holly Lack Earls, and her husband, Glen Earls, also known as Herbie Earls [Earls]. McCullough had loaned the Earlses money and sold them cars in the past; McCullough had also provided financial assistance to the defendant's mother. The defendant frequently stopped by the victim's house from time to time to check on his well-being.

On February 26, 1995 the defendant and her husband stopped to visit the victim. Although the defendant usually took her baby when she visited the victim, she did not do so on this occasion. The victim testified the defendant's husband acted "real friendly" and offered to bring in firewood for the victim. The victim accepted the offer; the victim told the defendant to sit on the couch. He sat in a chair by a wood stove with his back to the front door. The victim was surprised to learn the defendant had left her baby with her mother on this visit.

Herbie Earls brought in one load of firewood through the front door and went back outside. When he returned, he struck the victim over the head with an axe handle. He continued to beat the victim. The defendant had a clear view of her husband's actions. The victim said the defendant failed to warn him of the attack by her husband, and she did not look surprised when the attack occurred. As Earls continued to strike the victim, the defendant remained on the couch.

The victim attempted to block Earls's blows. Earls subsequently

3

knocked the victim against the wall and attempted to remove the victim's wallet from his front shirt pocket. The victim said he had $1,600 in his wallet at the time. He was able to kick Earls off and prevent him from reaching the wallet.

The victim fell to the floor. He accused the couple of coming to rob him. While the victim was on the floor, he obtained a hand axe and threatened to strike Earls.

Earls gave up, threw down the axe handle, and left with the defendant. The victim said he told the defendant, "Holly, you'd better get him out of here and get him out now."

The victim suffered head injuries, a broken arm and a broken finger. He was beaten on the shoulders, legs, and ankles with the axe handle. After the attack the victim took aspirin and sat down on the couch and either passed out or fell asleep. He did not awake until the next day. He drove himself to the sheriff's office and was taken from there to the hospital by ambulance where he had surgery on his arm; doctors implanted a metal plate and screws in his arm.

An officer testified he went to the victim's house to photograph the scene and observed blood throughout the living room and kitchen. The photographs indicate the victim lost a lot of blood especially in the area of the couch where he either fell asleep or lost consciousness.

At trial, a friend of the defendant's, Sylvia Walker, reluctantly testified for the state. Walker was married to Earls's cousin, Johnny Walker. She told jurors the couple came to her house after the attack; they wanted to find Johnny Walker. The defendant was upset.

4

On the stand, Walker claimed to have trouble remembering what the defendant said during the visit; she also retreated from a statement she gave to police implicating the defendant. She admitted to avoiding service of process and not wanting to testify. She ultimately admitted her statement to police was accurate.[1] In her statement she said:

> Holly and Herbie Earls came by our place one night looking for Johnny. Holly said that her and Herbie had been out at an old mans [sic] house and, tried to rob him. She said they had hit the old man in the head with an ax handle and tried to knock him out but couldn't do it. They got scared and left. She wanted Johnny to go back with them and said Johnny could make a lot of money in just a matter of 30 minutes. Holly did most of the talking and Herbie stayed outside working on his truck.
>
> I tried to get Holly to leave her baby with me but she wouldn't do it.
>
> We were living at Travelers Inn at the time. I learned a few days later that it was Grover McCullough that they was talking about.

The defendant testified in her own defense. She denied having knowledge of an attempt to rob McCullough. She had never discussed the matter with Earls. She knew the victim kept money in his front pocket. According to the defendant, she encouraged Earls to leave after he landed the first blow to the victim. She claimed Walker's statement was incorrect because Walker had been taking drugs all day and was "spaced out." The defendant, who was pregnant at the time, testified she was afraid of her husband. He had been drinking and taking drugs that day. She admitted she did not seek medical help for the victim.

---

[1] Walker said that the statement did not reflect everything she said to authorities.

She admitted she had lied to authorities about the attack. She told authorities Earls's attack upon the victim was precipitated by the victim whom she said pinched her on her breast. She lied to protect her husband.

While appellate review is generally limited to the issues presented for review, the appellate courts of this state are empowered to consider issues which have not been presented for review. Tenn. R. App. P. 13(b); Tenn. R. Crim. P. 52(b). See State v. Goins, 705 S.W.2d 648 (Tenn. 1986); State v. Maynard, 629 S.W.2d 911 (Tenn. Crim. App. 1981); State v. Harless, 607 S.W.2d 492 (Tenn. Crim. App. 1980).

Rule 13(b), Tennessee Rules of Appellate Procedure, also provides that an appellate court "may in its discretion consider other issues in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the "judicial process." In addition, Rule 52(b), Tennessee Rules of Criminal Procedure, provides that this court may notice plain error "at any time, even though not raised in the motion for a new trial or assigned as error on appeal . . . where necessary to do substantial justice." See State v. Ogle, 666 S.W.2d 58 (Tenn. 1984); Veach v. State, 491 S.W.2d 81 (Tenn. 1973); Herron v. State, 3 Tenn. Crim. App. 39, 456 S.W.2d 873 (1970), judgment vacated in part, 408 U.S. 937, 92 S.Ct. 2865, 33 L.Ed.2d 756 (1972).

A.

The defendant was convicted by a jury of attempted felony murder in the perpetration of a robbery. The Tennessee Supreme Court and this court have held attempt to commit first degree felony murder is not an

offense.  State v. Kimbrough, 924 S.W.2d 888, 892 (Tenn. 1996).  The

defendant did not raise this issue in her brief.[2]

The felony murder provision in effect at the time of the defendant's

crime stated:

> (a) First degree murder is:
>
> \* \* \* \*
>
> (2) A reckless killing of another committed in the
> perpetration of, or attempt to perpetrate any first
> degree murder, arson, rape, robbery, burglary,
> theft, kidnapping or aircraft piracy.

Tenn. Code Ann. § 39-13-202(a)(2).[3]

Criminal attempt requires that a person act with the culpability

required for the offense. Tenn. Code Ann. § 39-12-101.

Recklessness, the mens rea for felony murder,  is inconsistent with

desire or intention, the mens rea for attempt. Kimbrough, 924 S.W.2d at

891. "It is impossible to conceive of an attempt where a crime by

definition may be committed recklessly or negligently but not

---

[2] The offense in this case was committed in February 1995; the indictment was returned April 10, 1995 and the trial was held in December 1995. On November 2, 1994, this court issued an opinion in State v. Kimbrough finding that the offense of attempted felony murder does not exist. State v. Brian Keith Kimbrough, Shelby County No. 02-C-01-9308-CR-00182 (Tenn. Crim. App., Jackson, November 2, 1994).  The Tennessee Supreme Court affirmed that holding in its Kimbrough opinion issued June 3, 1996. 924 S.W.2d 888 (Tenn. 1996)

[3] The Tennessee General Assembly amended this section in 1995 to remove the word "reckless" from the felony-murder statute. This became effective July 1, 1995, after the commission of the crime and the return of indictment in this case. The Tennessee Supreme Court noted in Kimbrough that the deletion did "not affect our opinion that the offense of attempted felony-murder does not exist in Tennessee, since under the new definition the offense of felony-murder still does not require a specific intent." Kimbrough, 924 S.W.2d at 890, n.2.

intentionally." <u>Kimbrough</u>, 924 S.W.2d at 891. "'Although murder may be committed without an intent to kill, <u>attempt</u> to commit murder requires a specific intent to kill,'" <u>Kimbrough</u>, 924 S.W.2d at 891 (quoting <u>Braxton v. United States</u>, 500 U.S. 344, 351, 111 S.Ct. 1854, 1859, 114 L.Ed.2d 385 (1991)).

Our supreme court has noted the statutory scheme already provides for enhanced punishment when bodily injury occurs during a crime. "Considering that the legislature has already enacted specific offenses covering situations in which death or injury is threatened or occurs during the commission of certain felonies, we conclude that to extend the felony-murder rule to cases in which no death occurs would 'extend the scope of the doctrine beyond the pale of its statutory design and logical underpinnings.'" <u>Kimbrough</u>, 924 S.W.2d at 892.

"We conclude that one cannot intend to accomplish the unintended. Consequently, the offense of attempted felony murder does not exist in Tennessee." <u>Kimbrough</u>, 924 S.W.2d at 892.

Thus, the defendant's conviction for felony murder is reversed and dismissed.

B.

This court observes the defendant was indicted for attempting to kill the victim "unlawfully, intentionally, deliberately and with premeditation." The defendant was not indicted for attempted felony

9

murder. The jury was instructed only on felony murder.[4]

On remand, the defendant may be retried for attempted first degree murder. When a conviction is set aside because of an error in proceedings and not because the state failed to prove the defendant guilty, the defendant may be retried for an offense. State v. Kevin Burns, Shelby County No. 02-C-01-9605-CR-00170, 1997 WL 418492 (Tenn. Crim. App., Jackson, July 25, 1997).

In this case, the defendant's conviction for attempted felony murder is being reversed because the Tennessee Supreme Court has ruled the offense does not exist. Burns, Shelby County No. 02-C-01-9605-CR-00170 (Tenn. Crim. App., Jackson, July 25, 1997). The defendant was prosecuted for a crime which is impossible to commit. Thus, this was a fundamental error in the proceedings. The defendant was indicted for attempted first degree premeditated murder. That charge was not given to the jury so the jury has not considered attempted first degree premeditated murder. Because the defendant has neither been convicted nor acquitted of attempted first degree premeditated murder, her retrial is not prohibited by the principles of double jeopardy. Burns, Shelby County No. 02-C-01-9605-CR-00170 (Tenn. Crim. App., Jackson, July 25, 1997).

We hold that this matter is to be remanded for the defendant to be retried on the charge of attempted first-degree murder.

---

[4] There is no explanation in the record for this.

III.

The defendant also contends the evidence was insufficient as a matter of law to convict her of attempt to commit especially aggravated robbery.

A.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.), per. app. denied (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.), per. app. denied (Tenn. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, cert. denied, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Cabbage, 571 S.W.2d at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

11

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

B.

Before an accused can be convicted of attempt to commit especially aggravated robbery, the state must prove beyond a reasonable doubt that the accused attempted to intentionally or knowingly take property from the victim by using a deadly weapon and causing the victim to suffer serious bodily injury. Tenn. Code Ann. § 39-13-403; Tenn. Code Ann. § 39-13-401.

The defendant argues there was no medical proof that the victim suffered serious bodily injury. She also argues she did not have the requisite intent to attempt to commit especially aggravated robbery.

(1)

Tennessee Code Annotated defines criminal attempt as:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

> * * * *

12

(3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

(c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

Tenn. Code Ann. § 39-12-101.

The defendant and Earls went to the victim's home with the intention of robbing the 82-year-old man. The defendant and her mother had had financial dealings with the victim in the past. The defendant admitted she knew the victim carried money in his front pocket.

The defendant usually took her baby with her to visit the victim. She did not take the child on the night of the attack. The defendant sat on the couch and distracted the victim during their conversation until her husband began beating the victim with an axe handle. The axe handle constituted a deadly weapon. See Morgan v. State, 220 Tenn. 247, 252, 415 S.W.2d 879, 882 (1967); State v. Terry Logan, Fayette County No. 02-C-01-9609-CC-00297, 1997 WL 167231 (Tenn. Crim. App., Jackson, April 10, 1997) (a bat is a deadly weapon); State v. Richard Lee Anthony, Coffee County No. 01-C-01-9504-CC-00115, 1996 WL 63952 (Tenn. Crim. App., Nashville, February 13, 1996), per. app. denied (Tenn. July 8, 1996) ( a bat is a deadly weapon).

The defendant did not warn the victim of the impending attack, she

13

did not try to stop Earls, and she did not seek medical help for the victim later.

The statement given by Sylvia Walker implicates the defendant in the robbery plan. It was the defendant who explained the robbery plan to Sylvia Walker; and it was the defendant who broached the idea that Johnny Walker could return to the victim's house and help the Earlses complete the act.

A reasonable jury could infer the defendant attempted to intentionally or knowingly take property from another by using a deadly weapon. This court will next consider whether the final element - serious bodily injury - was present.

(2)

"Serious bodily injury" means bodily injury which involves:

(A) A substantial risk of death;
(B) Protracted unconsciousness;
(C) Extreme physical pain;
(D) Protracted or obvious disfigurement; or
(E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty;

Tenn. Code Ann. § 39-11-106(a)(33).

In support of her argument that evidence of serious bodily injury was lacking, the defendant relies on State v. Sims, where this court said that pain associated with a broken nose is not extreme enough to qualify as serious bodily injury. 909 S.W.2d 46, 49 (Tenn. Crim. App.), per. app.

14

denied (Tenn. 1995). In Sims this court also said the loss of teeth could constitute protracted disfigurement, but it must be shown this loss was caused by the incident beyond a reasonable doubt. 909 S.W.2d at 49.

In State v. Holland this court found the evidence supports the jury's findings that the victim suffered serious bodily injury. 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). The victim suffered a "huge knot" on her head. Initially it appeared the victim had a fractured skull. A witness said the victim was in a great deal of pain and also suffered dizziness. The defendant attempts to distinguish McCullough's injuries from those in Holland and argues the injuries to McCullough were not as severe as those to the victim in Holland.

The defendant also relies on State v. Derek Denton, Shelby County No. 02-C-01-9409-CR-00186, 1996 WL 432338 (Tenn. Crim. App., Jackson, August 2, 1996), where this court said suffering strikes to the face, a blackened eye, an injured lip, and a brief period of unconsciousness did not constitute serious bodily injury. This court noted the victim's doctor did not testify and the victim did not testify she suffered extreme physical pain.

In this case the victim, a diabetic, suffered a broken arm which required the insertion of a metal plate and screws. He told jurors he still had numbness in his arm and reduced strength. He also suffered a broken finger. He was struck in the forehead and on the top of the head. The victim said he lost a lot of blood. He either passed out or fell asleep and continued to bleed. When he awoke he was bloody and sore. He also suffered injuries to his shoulder, legs, and ankles. He told jurors that

15

he hurt "for a long time."  The victim was hospitalized for a couple days.

The injuries in this case are distinguishable from those in Sims and Denton.  The victim's testimony meets several definitions of the "serious bodily injury" requirement.

A reasonable jury could find the injuries imposed a serious risk of death considering the victim was 82 years old and responsible for administering his own insulin for diabetes. The injuries could have left him unable to take his medication. Tenn. Code Ann. § 39-11-106(a)(33)(A).

A jury could also find the victim suffered from protracted unconsciousness.  The victim testified he either passed out or fell asleep on the couch. The photograph of the couch illustrates he lost a significant amount of blood while on the couch.  Tenn. Code Ann. § 39-11-106(a)(33)(B).

The victim also testified he suffered physical pain as a result of the injuries. Tenn. Code Ann. § 39-11-106(a)(33)(C). He continues to suffer numbness and has limited use of his arm as a result of the break and the surgery. Tenn. Code Ann. § 39-11-106(a)(33)(E).

This court finds there was sufficient evidence to convict the defendant of attempted especially aggravated robbery.

The issue is without merit.

IV.

The defendant contends her sentence for assault with intent to commit especially aggravated robbery is excessive.  After finding the

16

defendant a standard offender, the trial court imposed a Range I sentence of twenty (20) years for attempted first degree murder and ten (10) years for attempted especially aggravated robbery in the Department of Correction. The trial court also imposed a $25,000 fine for each count for a total of $50,000. The trial court ordered that the sentences should run consecutively for an effective sentence of thirty (30) years.

Because this court has dismissed the conviction for attempted felony murder, the defendant's argument as to that sentence is moot. This court will consider the defendant's argument as to the sentence for attempted especially aggravated robbery.

A.

When an accused challenges the length and manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

17

In conducting a _de novo_ review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging a sentence imposed by the trial court has the burden of establishing the sentence is erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

B.

The defendant argues the use of four enhancement factors by the trial judge was inappropriate.

Attempted especially aggravated robbery is a class B felony. The range of punishment is eight (8) to twelve (12) years. The trial court imposed a mid-range sentence of ten (10) years. The trial court found the presence of two mitigating factors and five enhancement factors.

The trial court found the following enhancement factors:

> (4) A victim of the offense was particularly vulnerable because of age or physical or mental disability;
> (5) The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;
> (6) The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;
> (9) The defendant possessed or employed a firearm, explosive device or other deadly weapon

18

during the commission of the offense;

(16)   The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114.

The trial court found the presence of two mitigating factors:

(6)  The defendant, because of [her] youth or old age, lacked substantial judgment in committing the offense;

(12)   The defendant acted under duress or under the domination of another person, even though the duress or the domination of another person is not sufficient to constitute a defense to the crime.

Tenn. Code Ann. § 40-35-113.

The trial court said the above factors were used to determine the length of the sentences, but the court failed to specify which enhancement factors applied to which offenses.  Thus, the statutory presumption of correctness afforded by Tenn. Code Ann. § 40-35-401(d) does not apply. This court will address each factor without a presumption of correctness.

C.

The trial court erred in applying enhancement factor (4) regarding vulnerability.  Before a trial court may apply factor (4) to enhance a sentence within the appropriate range, the State of Tennessee must prove (a) the victim was particularly vulnerable, State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993), and (b) the age, physical disability, and/or mental disability of the victim was a factor during the commission of the

crime. <u>State v. Butler</u>, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994); <u>State v. Seals</u>, 735 S.W.2d 849, 853-54 (Tenn. Crim. App. 1987). "A person's age standing alone may have no bearing on size, strength or vitality." Thus unless the State produces evidence of physical or mental limitations at the time of the offense, along with proof of the victim's age, it cannot be presumed that the victim was <u>particularly vulnerable</u> based solely upon [] age." <u>State v. Poole</u>, 945 S.W.2d 93, 98 (Tenn. 1997). In the context of this case, the State of Tennessee failed to establish these prerequisites.

The victim, eighty-two years of age at the time, lived alone and was a diabetic. These facts standing alone, are not sufficient to support the use of factor (4). Just before the attack occurred the victim had been bringing in firewood. Despite the fact the victim was initially struck from behind and beaten, he was able to fend off the attacks and thwart the robbery attempt. Consequently, the trial court abused its discretion by applying this factor to enhance the defendant's sentence within the appropriate range.

D.

The trial court properly used factor (5) regarding exceptional cruelty to enhance the defendant's sentence for attempted especially aggravated robbery. This factor is not an element of attempt to commit especially aggravated robbery. <u>Poole</u>, 945 S.W.2d at 98 (exceptional cruelty is not an element of especially aggravated robbery); <u>State v. Antonio Byrd</u>, Shelby County No. 02-C-01-9508-CR-00232, 1997 WL 1235

20

(Tenn. Crim. App., Jackson, January 2, 1997), per. app. denied (Tenn. September 22, 1997). The phrase "extreme cruelty" is defined as "cruelty above that needed to effectuate the crime." State v. Lester Bennett, Sevier County No. 03-C-01-9403-CR-00104, 1994 WL 683373 (Tenn. Crim. App., Knoxville, December 8, 1994). This court has noted previously the "trial court should state what action of the defendant, apart from the elements of the offense, constituted 'exceptional cruelty.'" State v. Goodwin, 909 S.W.2d 35, 45, (Tenn. Crim. App. 1995). The trial court did not place into the record the justification for this factor.

This court notes the defendant distracted the victim and gave her husband an opportunity to attack the victim from behind. The defendant did not seek help for the victim during the attack or afterward. She left the victim bleeding and beaten at his house where he had no phone to call for help. See State v. Stanley Dewayne Myers, Blount County No. 03-C-01-9409-CR-00344 (Tenn. Crim. App., Knoxville, April 13, 1995) (upholding use of factor (5) in second degree murder when defendant left victim shot at the situs of shooting and failed to get help.) The victim testified that after the Earlses left he tried to yell for help from his front porch, but no one heard him and he returned inside where he either lost consciousness or fell asleep.

We conclude the actions of the defendant constitute exceptional cruelty.

E.

21

Enhancement factor (6), the victim suffered personal injuries, is inherent in the offense of especially aggravated robbery, and thus attempted especially aggravated robbery, because the crime requires that the victim suffer serious bodily injury. Therefore, application of that factor is inappropriate. Byrd, Shelby County No. 02-C01-9508-CR-00232 (Tenn. Crim. App. Jackson, January 2, 1997).

F.

The application of enhancing factor (9) for using a firearm during the commission of a crime was also improper. The use of a firearm is inherent in the crime of especially aggravated robbery, and thus attempted especially aggravated robbery. State v. Samuel Scott Minton, Bradley County No. 03-C-01-9508-CC-00217, 1996 WL 480859 (Tenn. Crim. App., Knoxville, August 27, 1996), per. app. denied (Tenn. January 27, 1997).

G.

Enhancement factor (16), that the crime was committed under circumstances under which the potential for bodily injury was great, is inherent in the offense of especially aggravated robbery and thus inherent in attempted especially aggravated robbery. Therefore, application of that factor is inappropriate. Byrd, Shelby County No. 02-C01-9508-CR-00232 (Tenn. Crim. App. Jackson, January 2, 1997).

22

In summary, the only enhancement factor that was appropriately applied was factor (5), regarding treating the victim with exceptional cruelty.

H.

As with the enhancing factors, the trial court did not specify which mitigating factors applied to which offenses. Thus, the statutory presumption of correctness does not apply and this court will consider each factor without the presumption. This court finds only one mitigating factor was present, factor (6). Due to the defendant's youth, she lacked substantial judgment when committing the offense. The defendant was eighteen at the time of the offense. She has no juvenile or adult record. She has two children. The use of this factor was appropriate.

As for factor (12) that the defendant was under the domination of her husband, there was nothing in the record to support this factor. Sylvia Walker's statement to police indicates it was the defendant who related the robbery plan to Walker and attempted to enlist the help of Johnny Walker. Thus, the use of factor (12) was not appropriate.

I.

As a standard Range I offender, the range for a Class B felony is eight (8) to twelve (12) years. Here, there was one mitigating factor and one enhancement factor. Tennessee Code Annotated § 40-35-210 states

23

in a situation with mitigating and enhancing factors, the sentencing judge must start at the minimum sentence in the range, enhance the sentence as appropriate for the enhancement factor and then reduce the sentence within the range as appropriate. The trial court sentenced the defendant to ten (10) years for attempted especially aggravated robbery, which was the midpoint in the range. Given the presence and weight of the enhancement factor and the mitigating factor, this was not error. A finding that enhancement factors were erroneously applied does not equate to a reduction in the sentence. State v. Keel, 882 S.W.2d 410, 423 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); see State v. Parker, 932 S.W.2d 945, 947 (Tenn. Crim. App.), per. app. denied (Tenn. 1996); State v. Williamson, 919 S.W.2d 69, 83 (Tenn. Crim. App. 1995). This court notes that the $25,000 fine was also appropriate under Tenn. Code Ann. § 40-35-111(b)(2).

The issue is without merit.

V.

The defendant contends that ordering the sentences to run consecutively was excessive. Because of this court's findings that the conviction for attempted felony murder was inappropriate, this issue is moot.

24

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

_____
WILLIAM M. BARKER, JUDGE

_____
JOE G. RILEY, JUDGE

25