EARNEST LEE HERRON, also known as Ernest Lee Herron, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

456 S.W.2d 873.

Court of Criminal Appeals of Tennessee. March 5, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

40

Marvin B. Gambill, Memphis, for plaintiff in error.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, Phil M. Canale, Jr., Dist. Atty. Gen., Leonard T. Lafferty, Jewett H. Miller, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

RUSSELL, Judge.

The Plaintiff-in-Error, Ernest Lee Herron, hereinafter called the defendant, was tried and convicted of murder in the first degree and sentenced to death by electrocution. He has properly perfected an appeal in the nature of a writ of error to this court and we have the case for decision. Defendant was represented by employed counsel upon the trial and is so represented upon this appeal. Several assignments of error are urged upon this court.

Upon the selection of a jury of twelve, and one alternate, the court had all thirteen take the oath together. It was then called to the court's attention that our law calls for the alternate juror to be sworn separately. The judge then ordered the jury sworn again, with the twelve sworn first and then the oath was administered to the alternate. Counsel for the defendant objected to this procedure, and moved "for a mistrial until the next term of court." The motion was overruled. The jury was respited for the night without any proof having been taken. On the following morning, the court asked defendant's lawyer if he renewed his "motion for a mistrial" at that time, and received an affirmative response. The prosecuting attorney announced that the state would join in the motion. Then followed:

"Mr. Gambill (defendant's attorney): 'To the next term of court, if the court please.'

"The Court: 'This motion—we will take these motions up separately—the motion for a mistrial is granted.' "

The court entered a mistrial, discharged the jury, and

overruled the motion for a continuance. A new jury was empaneled and the trial proceeded. The first assignment of error which we must adjudicate is whether it was error to require the defendant to again go to trial on the same day as a mistrial was declared. The thrust of the defendant's contention is that he should have had a continuance because (1) his motion was a motion for a mistrial to the next term of court, and (2) under his theory, T.C.A. § 40-2006 and T.C.A. § 40-2515 preclude a retrial on the same date as a declaration of a mistrial.

We do not think that the cited statutes support defendant's position. T.C.A. § 40-2006 provides for at least three days between the arrest and return of the indictment and the commencement of the trial in capital cases. That period of time in this case was approximately nine months. The other statute relied upon, T.C.A. § 40-2515, provides that where a jury is legally discharged the case may again be tried at the same or another term of court. There is nothing either express or implied in this statute which would preclude a retrial on the same day, absent a showing of prejudice.

The defendant's motion "for a mistrial to the next term of court" is unknown to our procedure. It seeks to combine a motion for a mistrial with a motion for a continuance, and it is now urged that such a welding required a single uniform action. We cannot agree. Our law recognizes a motion for a mistrial, and has rules by which the merits of such a motion may be judged; and likewise we are equipped with rules of law applicable to continuances; and there is no necessary or usual relation between the two. Therefore, we feel that the trial judge did the only logical thing; that is, he considered

each part of the motion in turn by applying the law applicable thereto, granting the motion for a mistrial and denying the motion for a continuance. For this action to have been error, the denial of a continuance would have had to have been an abuse of the trial judge's discretion. Rushing v. State, 196 Tenn. 515, 268 S.W.2d 563; Bass v. State, 191 Tenn. 259, 231 S.W.2d 707; Moorehead v. State, 219 Tenn. 271, 409 S.W.2d 357. We find no such abuse. This trial date was, in fact, selected by defendant's counsel under most generous license of the trial judge at the time of the granting to defendant of a continuance previously. Absolutely nothing in this record hints of prejudice to the defendant from this denial of his motion for a continuance, and the assignment is overruled.

The next alleged error has to do with the jury selection process. It is alleged that it was error for the trial judge to excuse for cause prospective jurors who stated, in reply to allegedly improper leading questions, that they would not consider the death penalty. The court allegedly erred in announcing that the court would sustain, and in sustaining, all challenges for cause based on refusals to consider death as punishment regardless of the framing of questions on voir dire, resulting in the state exceeding its allowable peremptory challenges (it being alleged that there were 22 such challenges for cause).

Only a small part of the voir dire examination is contained in the bill of exceptions, and there is no record as to how many challenges for cause were granted. We have the interrogation of five prospective jurors, who answered substantially the following question in the affirmative and were not challenged:

"If you are selected as a juror in this case, and should you find the defendant guilty beyond a reasonable doubt and to a moral certainty of murder in the first degree or in the perpetration of a robbery, and there are no mitigating circumstances, would you consider death as punishment in such a case?"

The next juror, Mr. Edwards, responded in the negative. He was then asked:

"I take it from your answer, Mr. Edwards, then, that you will not follow the law in this state as given you by His Honor, Judge Colton, and consider death as punishment under such instructions? Is that right?"

His affirmative response brought a challenge for cause, but before it was ruled upon, defendant's counsel interposed an objection, contending (1) that the answer did not give rise to a valid ground for challenge for cause in view of Witherspoon (Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776), and (2) the question was leading. A long legal argument followed, at the close of which defendant's counsel moved that the questions be excluded, his motion was overruled, and then defendant's counsel said:

"I want to renew my same motion on each one that he challenges for cause, if the court please, based on the way he's framing his questions to these jurors."

"The Court: Then you may approach the bench on each—

"Mr. Miller: If Your Honor please, I think that this one objection, that it can be a continuing objection and so noted by the court at this time.

"The Court: That will cover all objections. It will be understood that is the ruling of the court.

"Mr. Gambill: Each one he challenges for cause.

"The Court: And you may note your exception.

"Mr. Gambill: Very well, Your Honor.

"The Court: As to each one."

This is all that our record has relative to the voir dire proceedings. We do not know how many other prospective jurors were challenged for cause. We cannot pass upon the allegation of error that the trial judge sustained all challenges for cause regardless of the framing of the questions. We are required to presume that the proceedings were regular where that portion of the record complained of is not preserved in the bill of exceptions. James v. State, 215 Tenn. 221, 385 S.W.2d 86. This oversight does not involve state action, since the bill of exceptions was approved by retained counsel.

We do have the questions asked prospective juror Edwards and his answers thereto, and may therefore examine them in the context of the rules of *Witherspoon.* The specific holding of that case is that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. *Witherspoon* allows the prosecution to challenge for cause those prospective jurors who state that they would *automatically* vote against the death penalty (in addition to those who state

that their views on the death penalty would influence their determination of guilt).

We feel that the questions objected to here were framed in a sincere effort to comply with *Witherspoon* and ascertain the identity of those prospective jurors who would *automatically* vote against the imposition of the death penalty. Challenges for cause directed at such prospective jurors were properly sustained.

We now consider the question of the admissibility into evidence of the fruits of a search of defendant's residence.

The victim of the robbery-murder was Arthur B. Lanier, a neighborhood druggist, who was robbed and beaten to death while keeping shop alone on the evening of December 30, 1967. The police investigation developed that the defendant's name appeared several times in the store's notebook wherein was recorded sales of non-prescription controlled drugs. The police determined that he should be questioned about the other names in the book. During questioning, it was noted that the defendant had some scratches on his right hand. He explained that these injuries were received at work and gave the names of co-workers who he said would so verify. The defendant lived relatively near the drug store where the crime was committed, and fitted the general description given by a witness of a man seen leaving the store shortly before the crime was discovered. In his initial questioning, he related an alibi wherein he was at the home of one Willie Gordon until 10:00 P.M.; and denied that he had been in the drug store all that day. The victim's partner, Mr. Taylor, told the police that the defendant had in fact been in the store that day. De-

fendant's friend. Willie Gordon, told them that defendant had left his house shortly before 9:00 P.M. (not 10:00 P.M.). Defendant's co-workers had no knowledge of any injuries to his right hand on the job. So, at 9:30 P.M. on the evening of December 31 (the day following the crime) the defendant was placed under formal arrest, advised of his rights, and allowed to make a telephone call. He talked freely and voluntarily to the police on the following day and on January 2nd. He admitted that he had a toy pistol at home. At this time the investigating officers gave consideration to obtaining a search warrant to search defendant's residence. The officers testified that when one of them started preparing a search warrant that the defendant stated that the warrant would not be necessary, that they could search his home at any time so long as he could accompany them. An agreement as follows was freely and voluntarily signed:

"TO WHOM IT MAY CONCERN:

I, EARNEST HERRON, do hereby give consent to Lt. S. T. McCachren, Lt. B. N. Linville and/or any other member of the Police Department to search my home at 1459 Felix and its premises and all outhouses, this being my residence, and this search being made for evidence in connection with the murder of Arthur B. Lanier, knowing that any evidence found in this search can be used against me in a trial in court.

I hereby give consent for this search provided that it is made in my presence.

(s) Earnest L. Herron
Date:
Time: 6:20 P.M.
Jan. 2, 1968

WITNESS:

 (s) <u>U. C. Hylander</u>

 (s) <u>C. A. Gregory</u>

The defendant, then accompanied three police lieutenants to his home. In route, they say that he persuaded them to remove his handcuffs. His mother had changed the lock on his house, so the defendant opened a window to allow their entry. After the search had continued for some little time, the defendant saw one of the officers as he was discovering some of the stolen articles hidden in a closet, and immediately thereafter bolted out, and made good his escape. Subsequent to his escape, more officers came, a thorough search was made, and many items of evidence found.

The defendant contends that his consent to search was conditional upon his being present, and that permission for the search ended when he left, and that introduction of the evidence found thereafter was illegal.

It would be well to note, first, that part of the evidence was found before defendant escaped; and, secondly, that upon the trial he testified that he had been in the drug store after Mr. Lanier had been beaten, that he picked up the gun (which was found in his house) and $675.00 in money and carried them home with him. He denies, however, that he took Mr. Lanier's billfold and watch, which were found in his home. His bloody shoes, found in his home, got that way when he dragged Mr. Lanier out of a pool of blood, defendant testified.

 We feel that this search was lawful. Searches by consent have long been recognized in Tennessee; and where such consent is given voluntarily and understand-

ingly it is deemed effective to waive the constitutional right to require a search warrant. Simmons v. State, 210 Tenn. 443, 360 S.W.2d 10; Fox v. State, 214 Tenn. 694, 383 S.W.2d 25; Frix v. State, 148 Tenn. 478, 256 S.W. 449. The sufficiency of a consent depends largely upon the facts and circumstances presented by each particular case. The burden rests with the prosecution to show that the consent was voluntary. We feel that the evidence in this case clearly shows that the consent was voluntarily given.

We hold that the search was reasonable, under the requirements of Warden Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782, that the items seized must bear a reasonable nexus to a particular criminal apprehension or conviction. Each of the items seized bore a direct relationship to the investigation of the murder of Mr. Lanier. Hence, the search was reasonable within the meaning of the fourth amendment.

The main contention of the defendant relative to the legality of the search is that when the defendant escaped and left his home he became "not present," thereby revoking his conditional consent to the search of his home. We hold that the condition in the consent that he be present was waived by the defendant when he voluntarily left. His departure was not to effect a cessation of the search, but was to effect his escape. When a defendant escapes custody and becomes a fugitive from justice when his appeal is pending he is deemed to have waived his right to appeal by his acts of escape. Bradford v. State, 184 Tenn. 694, 202 S.W.2d 647. Ours is an analogous situation. It would appear that defendant conceived his plan of escape when the officers were pre-

paring to get a lawful search warrant that would not have required his presence, got them to agree to take him to his home without handcuffs, and when the search was thorough enough to begin to bear fruit, he fled. The only apparent condition to the consent was his presence, which the officers did all that they could to achieve. At no time was defendant prevented from being present. On the contrary, great effort was exerted to find and return him. Clearly, the defendant waived his right to be present; and the continued search was reasonable, unconditional and legal.

Complaint is made that certain statements of the defendant introduced in evidence were incompetent because he allegedly had not been advised of his constitutional rights in accordance with the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and it is further alleged that same were made in conjunction with a denial of the right to counsel. This alleged error was not made a part of defendant's motion for a new trial, so does not have to be considered by this Court under Tennessee Supreme Court Rule 14(5), duly adopted as a rule of this court.

However, in view of the seriousness of this case and the allegation of constitutional error, we choose to adjudicate the assignment. We find that the record reflects that the defendant was advised of his constitutional rights on more than one occasion prior to his interrogation. Moreover, the questioning of the defendant ceased immediately when the defendant stated that he wanted to consult an attorney before answering further questions. We find no evidence of his having been de-

prived of an asserted right to have counsel present at any time. There is no merit to this assignment.

We find that the evidence does not preponderate against the verdict and in favor of the innocence of the defendant. It is not necessary to detail the evidence. This Court has made a painstaking study of this record, and concludes that the evidence of guilt is in fact overwhelming. A druggist was beaten to death and robbed while alone in his store at night, shortly before closing time. Strong circumstantial evidence linked the defendant with the crime. The druggist had been beaten over the head with a revolver so viciously that a portion of the hammer from the pistol was imbedded in his skull, the cylinder was knocked from the gun, its bullets spilled onto the floor, and its handles broken and the pieces scattered over the scene. The remains of this revolver were located in defendant's home, hidden beneath a gas heater. The wrist watch stolen from Mr. Lanier was found hidden in a cup in defendant's home. Mr. Lanier's billfold was hidden in defendant's closet. The bloody shoes were there. A box of bullets matching those scattered in the store was there.

The defendant testified, though he had never said so before, that he was in fact in the store, found Mr. Lanier already beaten, picked up the gun and put it in his pocket, pulled Mr. Lanier out of a pool of blood, picked up $675.00 off a counter and left. He denied that he took the billfold and watch found in his house. His story obviously was not believed by the jury, and we do not differ with their judgment. The evidence clearly does not preponderate against the verdict.

█ The final question is raised by the assignment of alleged error wherein it is asserted that the death penalty fixed by the jury was too severe. The verdict returned by the jury was within the statutory limits. This was a terrible crime, and the evidence wholly fails to show mitigating circumstances. Death by electrocution is the punishment prescribed by our law for first degree murder, absent mitigating circumstances. We feel sure that the trial judge and jury set this punishment only because it was their duty under the law to do so. We feel the weight of our responsibility in affirming this conviction.

We find no merit to any of the assignments of error, and no other error in the record, and therefore affirm the judgment of the trial court.

HYDER and MITCHELL, JJ., concur.

## ORDER

The date of execution of sentence in this case is hereby fixed as of Monday, December 7, 1970.