**STATE of Tennessee, Appellee,**

v.

**James Richard JACKSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Sept. 16, 1993.

Certiorari Denied March 7, 1994.

Permission to Appeal Denied by Supreme Court March 7, 1994.

Gloria A. Dumas, Nashville, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Christina S. Shevalier, Asst. Atty. Gen., Nashville, Victor S. Johnson, III, Dist. Atty. Gen., Deb U. Smith, Asst. Dist. Atty. Gen., Nashville, for appellee.

## OPINION

PAUL G. SUMMERS, Judge.

The appellant, James Richard Jackson, presents a direct appeal from the Davidson County Criminal Court pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The trial court found the appellant guilty of aggravated rape and aggravated sexual battery. He subsequently filed a motion for new trial and judgment of acquittal. After a hearing on the motion, the court granted the appellant's judgment of acquittal as to the aggravated sexual battery charge. The court sentenced the appellant to twenty years as a Range I, standard offender.

The appellant contends that the trial court erred in admitting testimony regarding evidence obtained pursuant to a search of his body during the performance of a rape kit examination. Specifically, he contends that the examination violated his Fourth Amendment right against unreasonable searches; his Fifth Amendment right against self-incrimination; and his Sixth Amendment right

to counsel. He also alleges that the trial court erred in not dismissing his indictment on the grounds of prosecutorial misconduct. Following a brief outline of the facts of this case, we will address each of these claims separately.

The victim, twelve years old at the time of the alleged offense, went to the Miller Hand Paint Shop to ask if anyone wanted puppies from her dog's litter. She had visited the shop before and knew the appellant who worked there as a painter. The appellant was alone in the store when she arrived. The victim testified that while speaking with the appellant, he pushed her to the floor and pulled her pants down. The appellant then sexually penetrated the victim. The attack was interrupted by a knock at the door, and the victim was able to escape. She returned home and told her family what had happened.

The police subsequently arrested the appellant and took him to General Hospital for a rape kit examination. Once at the hospital, the appellant signed a waiver permitting the police to perform the examination upon him. The test included the collection of thirty pubic hairs and thirty head hairs. The FBI analyzed the hair and determined that the loose hair found in the victim's "vaginal area microscopically matched the pubic hairs of Mr. Jackson [appellant] in all characteristics."

The appellant makes a multiple attack on the testimony relating to the evidence seized pursuant to his rape kit examination. He first claims that the examination violated his Fourth Amendment right against unreasonable searches. Specifically, he argues that he was too intoxicated at the time of the examination for his consent to have been voluntarily and intelligently given.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." Intrusions of the human body constituting a search of the "person" are subject to the constraints of the Fourth Amendment. *See Schmerber v. California,* 384 U.S. 757, 767–72, 86 S.Ct. 1826, 1833–37, 16 L.Ed.2d

908 (1966); *State v. Blackwood,* 713 S.W.2d 677, 679 (Tenn.Crim.App.1986). Consent voluntarily and understandingly given is an exception to the constitutional requirement of a search warrant. *Herron v. State,* 3 Tenn.Cr. App. 39, 456 S.W.2d 873, 878 (1970). The sufficiency of consent depends largely upon the facts and circumstances in a particular case. The burden is on the prosecution to prove that consent was freely and voluntarily given. *State v. McMahan,* 650 S.W.2d 383, 386 (Tenn.Crim.App.1983).

A defendant may be deemed incapable of giving consent to a search or seizure due to the influence of drugs or intoxicants on his system. However, the fact that a defendant was intoxicated at the time of giving consent does not *per se* invalidate it. Rather, it is the degree of intoxication that is determinative of this issue. *Drinkard v. State,* 584 S.W.2d 650, 654 (Tenn.1979). As the Court in *Drinkard* explained, "one may be mentally competent to give valid consent to a disposition of his or her automobile, and yet be too intoxicated under the statute ... to lawfully operate an automobile." *Id.* at 654. The same rationale applies in the present case.

At the suppression hearing, Officer Mark Chestnut testified that he arrested the appellant at approximately 10:50 p.m. on April 18th. He detected a moderate smell of alcohol on the appellant and inquired whether he had been drinking. Appellant responded that he had consumed four or five beers. The officer testified that appellant's speech was "okay" and that he had no problem understanding him. In his opinion the appellant was not "in an intoxicated state." He stated that the appellant asked a lot of questions but did not seem to understand why he was being placed under arrest.

Detective Bruce Amos, who met with the appellant at the hospital on the night of his arrest, also testified at the suppression hearing. He stated that appellant's speech was not slurred; that he was coherent; and that he seemed to understand matters when the rape kit examination was explained to him. He also stated that "[t]he only way I could

tell he had been drinking was I could smell it on his breath a little bit, but that was it."

Dr. Anh Dao, Director of the laboratory at the General Hospital, testified for the defense. He stated that the appellant's blood alcohol level was 0.18 at the time it was drawn. He received the report at 5:54 a.m. on April 19th, but there was no evidence as to when the blood was drawn. Based upon his assumption that the blood was drawn between 4:30 and 5:00 a.m., he estimated that appellant's blood alcohol level was approximately 0.22 at midnight, the time that appellant consented to the rape kit examination. On cross-examination he testified that it was possible for someone with a blood alcohol level of 0.22 to function normally if that person drank regularly and had gotten his body used to alcohol.

Appellant testified that approximately ten hours prior to his arrest he had consumed three six-packs of beer and two pints of whiskey. He remembered signing the consent forms but stated that he did not understand them. On cross-examination, appellant admitted to being an alcoholic. At the conclusion of the suppression hearing, the trial court denied the appellant's motion.

■ The question of whether the appellant voluntarily and understandingly consented to the rape kit test was a disputed question of fact. The trial court had the opportunity to observe the witnesses' demeanor and determine their credibility. A trial judge's findings of fact at the conclusion of an evidentiary hearing on a motion to suppress are conclusive on appeal unless the evidence contained in the record preponderates against the trial court's judgment. *State v. Dulsworth*, 781 S.W.2d 277, 284 (Tenn.Crim.App. 1989); *State v. Killebrew*, 760 S.W.2d 228, 233 (Tenn.Crim.App.1988). We find there to be material evidence contained in the record to support the trial judge's findings of fact. This issue is overruled.

In his next issue the appellant contends that he was denied his Sixth Amendment right to counsel during the rape kit examination conducted at the hospital.

■ The Sixth Amendment provides, that "[i]n all criminal prosecutions, the ac-

cused shall . . . have the assistance of counsel for his defense." This right applies to all "critical" stages in the criminal justice process. *Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985); *State v. Butler*, 795 S.W.2d 680, 685 (Tenn. Crim.App.1990). More clearly, this means that "a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977); *Butler*, 795 S.W.2d at 685. Judicial proceedings are considered initiated, and thus Sixth Amendment rights attach, at the time an arrest warrant issues, a preliminary hearing is held (if no arrest warrant is issued), or an indictment or presentment is returned. *State v. Mitchell*, 593 S.W.2d 280, 286 (Tenn. 1980).

■ In the case *sub judice*, appellant was arrested on the date of the offense and taken directly to the hospital where the examination was performed. No judicial proceedings had been initiated against him at the time of the examination. As such, the appellant's Sixth Amendment right to counsel had not attached. This issue is without merit.

The appellant also asserts that the admission of the testimony relating to the rape kit examination violated his Fifth Amendment right against self-incrimination. We disagree.

■ As this Court noted in *State v. McAlister*, 751 S.W.2d 436, 440 (Tenn.Crim. App.1987), "the Fifth Amendment privilege against self-incrimination protects an accused from being compelled to testify against himself or from otherwise providing the State with evidence of a testimonial or communicative nature." This privilege is inapplicable to evidence nontestimonial or noncommunicative in nature. *Schmerber v. California*, 384 U.S. 757, 761, 86 S.Ct. 1826, 1830–31, 16 L.Ed.2d 908 (1966); *State v. McAlister*, 751 S.W.2d at 440. As this Court noted in *McAlister*, the taking of hair samples does not fall within the scope of the Fifth Amendment. This issue is without merit.

In his final issue the appellant asserts that the trial court erred in failing to dismiss the

indictment on the ground of prosecutorial misconduct. Specifically, he complains that: (1) police officers were permitted to testify from each other's notes; (2) police officers conducted a search and seizure without a warrant; and (3) the state placed a photograph of the appellant in jail attire on the counsel table during trial.

First, we find no evidence in the record showing that police officers testified from each other's notes at trial. The evidence reveals that the district attorney supplied the officers with a synopsis of the case during a pretrial conference. The officers testified that they had reviewed the reports of other officers and had "glanced at" the synopsis prior to trial. The officers stated, however, that they relied upon their own notes and personal knowledge when testifying.

Rule 615 of the Tennessee Rules of Evidence provides in part that "[t]he court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness." Importantly, the Advisory Commission Comments state that the rule "does not prohibit a witness from reviewing depositions of other witnesses before testifying." We find no error in the officer's reviewing other officers reports before trial.

Regarding the warrantless search, as has previously been noted, consent given voluntarily and understandingly is a valid exception to the warrant requirement. *Herron v. State*, 3 Tenn.Crim.App. 39, 456 S.W.2d 873, 878 (1970). In the present case, the appellant gave consent for a rape kit examination to be performed.

The appellant also alleges that a photograph of him in jail attire placed at the prosecution's table constituted prosecutorial misconduct. At trial, defense counsel noticed a picture of the appellant on the cover of a report lying on the prosecution's table. This was brought to the attention of the court and immediately removed from the table. There is no evidence in the record that the jury actually saw this photograph or, if they did, that they recognized the appellant or the

nature of the clothing he was wearing. We find this issue to be without merit.

The judgment of the trial court is affirmed.

PEAY, J., and PAUL R. SUMMERS, Special Judge, concur.