# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. BOYD L. JONES, III

### Direct Appeal from the Criminal Court for Shelby County
### No. 00-14096    John P. Colton, Jr., Judge

_____

### No. W2002-00827-CCA-R3-CD  - Filed March 26, 2003

_____

The Defendant, Boyd L. Jones, III, pled guilty to possession of marijuana. As part of his plea agreement, he expressly reserved with the consent of the trial court and the State the right to appeal three related certified questions of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i). The certified questions of law stem from the trial court's denial of the Defendant's motion to suppress. The central issue in this appeal is whether law enforcement officers violated the Defendant's Fourth Amendment right to be free from unreasonable searches and seizures when they entered his residence without a search warrant and detained him until they obtained written consent to search from the lessee of the residence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Jeffery Jones, Memphis, Tennessee, for the appellant, Boyd L. Jones, III.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Tom Hoover, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On February 19, 2000, the Memphis Police Department received a complaint that drugs were being sold from an apartment at 4143 Second Northside Drive, where the Defendant lived with his girlfriend. Officer Thomas Manns, along with three other officers, went to the apartment to conduct a "knock and talk" investigation. The officers arrived at the apartment and knocked on the door at approximately 8:00 or 9:00 that evening. The Defendant answered the door. The officers asked whether he was the lessee of the apartment, and he replied that he was not. The officers then asked to speak with the person who rented the apartment. There is some uncertainty as to exactly what happened at this point. Officer Manns testified at the hearing on the Defendant's motion to suppress

that the Defendant went into the apartment to find his girlfriend, Alma Jackson, who rented the apartment. Officer Manns testified that they waited outside the apartment until Ms. Jackson came to the door and invited the officers inside. However, Officer James Byars testified that it was the Defendant who invited the officers to come into the apartment; then the Defendant went to find Ms. Jackson. To further complicate the matter, Ms. Jackson testified that she never went to the door. She stated that she had been asleep in her bedroom, and she got up to use the restroom. When she came out of the restroom, two police officers were standing in her hallway. The Defendant testified that when the police officers knocked on the door, Ms. Jackson's brother Tyrone answered the door. The Defendant stated that when he did, the police officers stepped into the living room of the apartment and stated that they were looking for "Bo Didly," which is the Defendant's nickname. The officers asked the Defendant whether anyone else lived in the apartment. The Defendant testified that he told them that his girlfriend was sleeping in the bedroom, and two of the officers proceeded to walk to the back of the apartment.

Officer Manns testified that he spoke with Ms. Jackson and asked her to sign a consent-to-search form. He stated that she signed the form in the kitchen of her apartment in the presence of himself and Officer Byars. However, Officer Byars testified that Officer Manns took Ms. Jackson into the hallway of the apartment to have her sign the form, but he was not sure whether they went all the way into the bedroom. He further testified on cross examination that he was not present when Ms. Jackson signed the consent to search form. The Defendant testified that two of the officers walked to the back of the apartment, to the bedroom, and he did not see them again until approximately twenty minutes later when they emerged with the consent-to-search form. Ms. Jackson also testified that the two officers who she found standing in her hallway walked with her into her bedroom and told her that they had received a complaint that drugs were being sold from her apartment. She responded that no drugs were being sold out of her home. The officers then asked her to sign a consent-to-search form, which she signed because she had "nothing to hide."

Officer Byars testified that he asked the Defendant to remain seated on a chair until Officer Manns had finished talking to Ms. Jackson. The Defendant testified that he did not feel free to leave while the two officers were in the back of the apartment because one of the other officers told him to "have a seat."

After Ms. Jackson signed the consent-to-search form, the Defendant asked why the officers were there. Officer Manns explained to the Defendant that they were going to search the apartment for narcotics because they had received a complaint that drugs were being sold from that apartment. At that point, the Defendant indicated that he did not want Ms. Jackson to be in trouble, and he produced a bag of marijuana from the pocket of his jacket. The officers then placed the Defendant under arrest.

The Defendant filed a motion to suppress the marijuana that was recovered as a result of the police officers' entry into Ms. Jackson's residence. The Defendant asserted that the entry of the officers violated his right to be free from unreasonable searches and seizures because the officers did not properly obtain consent to enter and search the residence. The trial court overruled the

Defendant's motion to suppress, and he pled guilty to possession of a controlled substance. However, he expressly reserved the right to appeal certified questions of law. The judgment entered in the trial court states the certified issues as:

> (1) were the Defendant's Fourth Amendment Rights violated by the officers of the Memphis Police Department by trespassing or entering his apartment without permission or invitation[;]
> (2) were the Defendant's Fourth Amendment Rights violated by the officers of the Memphis Police Department by detaining the Defendant while his apartment was searched[; and]
> (3) was the entry into the Defendant's apartment by the police officers for purposes of gaining written consent to search inherently coercive and violative of the Defendant's Fourth Amendment Rights.[1]

Tennessee Rule of Criminal Procedure 37(b)(2) provides that an appeal lies from any judgment of conviction entered pursuant to a plea of guilty or nolo contendere if

> (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case; or
> . . .
> (iv) Defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case.

In State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988), our supreme court set forth the following prerequisites for appellate review of certified questions pursuant to this Rule of Criminal Procedure:

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive

---

[1] The trial court's judgment also lists a fourth certified issue. However, the Defendant did not argue the issue in his brief; therefore we will not address it.

of the case. . . . Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. . . . No issue beyond the scope of the certified question will be considered.

See also State v. Pendergrass, 937 S.W.2d 834, 836-37 (Tenn. 1996); State v. Irwin, 962 S.W.2d 477, 478-79 (Tenn. 1998). The prerequisites for the consideration of the merits of a certified question of law as required by Preston having been met, we begin our analysis of whether the trial court erred by denying the Defendant's motion to suppress.

When reviewing the grant or denial of a motion to suppress,

[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the application of the law to the facts as found by the trial court is a question of law which the appellate court reviews de novo. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution provides:
Unreasonable searches and seizures.--The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Similarly, Article 1, section 7 of the Tennessee Constitution guarantees that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures.

The intent and purpose of the prohibition against unreasonable searches and seizures found in the Tennessee Constitution has been found to be the same as that found in the Fourth Amendment to the United States Constitution. See State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). According to the Supreme Court, the purpose of the prohibition against unreasonable searches and seizures in the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). The Fourth Amendment protects people, not places, wherever

they may have a "reasonable expectation of privacy." Katz v. United States, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J. concurring).

Under both the United States and the Tennessee Constitutions, a search or seizure conducted without a warrant is presumed unreasonable. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); Simpson, 968 S.W.2d at 780; State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992). Therefore, evidence seized as a result of a search or seizure conducted without a warrant must be suppressed unless that search or seizure was conducted pursuant to one of the recognized exceptions to the warrant requirement. See id. In the instant case, it is clear that the police officers did not have a warrant to search the apartment of the Defendant's girlfriend; therefore, absent an exception to the warrant requirement, the intrusion of the police into the apartment would be illegal.

Our supreme court has noted that, "it is, of course, well settled that one of the exceptions to the warrant requirement is a search conducted pursuant to consent." State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), and State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993)). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." Jackson, 889 S.W.2d at 221. The State bears the burden of proving that consent was freely and voluntarily given. See State v. McMahan, 650 S.W.2d 383, 386 (Tenn. Crim. App. 1983). We also note that "'the existence of consent and whether it was voluntarily given are questions of fact.'" State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999) (quoting McMahan, 650 S.W.2d at 386).

The trial court made the following findings of fact with respect to the Defendant's motion to suppress.

On February 19, 2000, Memphis Police Department Officers knocked on the door at an apartment rented by Defendant's girlfriend, Ms. Jackson. Defendant lived at the location with Ms. Jackson. When Defendant answered the door the officers asked for the person who rented the apartment; Defendant called for Ms. Jackson, and invited the officers inside the apartment.

The police asked Ms. Jackson to sign a consent to search for purposes of a drug investigation. Ms. Jackson signed the consent to search. Defendant was made aware of the consent to search. The officers also told Defendant that they received a drug complaint on the house. As a result, Mr. Jones produced marijuana from his pocket. Defendant stated that he did not want his girlfriend to get in trouble and said he was the one the police were looking for.

The Defendant contends that the police officers trespassed by entering the apartment where the Defendant resided without an invitation. He argues that the trial court erred by finding that the Defendant invited the officers inside the residence because the testimony of Officers Manns and

Byars was contradictory. Officer Byars testified that the Defendant invited them into the apartment, but Officer Manns testified that they waited outside until Ms. Jackson extended an invitation to them. However, regardless of which officer correctly remembered who invited them into the apartment, the fact remains that each officer testified that they were invited into the apartment. The only witness who testified that the officers entered the residence without an invitation was the Defendant. In order to find that the officers entered the apartment uninvited, the trial court would have to credit the testimony of the Defendant over that of both Officer Byars and Officer Manns. Obviously, the trial court did not so credit the Defendant's testimony. We are bound by a trial court's findings of fact in a suppression hearing unless the evidence preponderates against them. See Odom, 928 S.W.2d at 23. In this case, it does not.

The Defendant also asserts that the consent to search, which was obtained from the Defendant's girlfriend, was not freely and voluntarily given. As we noted above, the State bears the burden of proving that consent was freely and voluntarily given. See McMahan, 650 S.W.2d at 386. Ms. Jackson, the Defendant's girlfriend, testified that she signed the consent to search form because she "[had] nothing to hide." There is no evidence that the police took any improper action that would amount to coercion. Therefore we conclude that the consent to search was properly obtained. In addition, the marijuana recovered from the Defendant was produced voluntarily by the Defendant when the officers explained their reason for searching the apartment. The marijuana was not found as a result of a search conducted pursuant to the written consent to search the apartment. This issue is without merit.

Finally, the Defendant argues that he was illegally detained by the officers while the consent to search form was being signed by Ms. Jackson. The trial court did not rule on this issue because the Defendant failed to raise it in his motion to suppress. Because the issue was not raised during the motion to suppress, the trial court made no factual findings particular to this issue. This issue was therefore not "passed upon by the trial judge." See Preston, 759 S.W.2d at 650. "A trial judge cannot be put in error as to a matter upon which he [or she] did not rule." Dotson v. State, 2 Tenn. Crim. App. 388, 393, 454 S.W.2d 174, 177 (1970). "It is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this Court." State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994) (citation omitted). This issue is waived.

Accordingly, the judgment of the trial court is affirmed.

 

_____

DAVID H. WELLES, JUDGE