# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
March 9, 2005 Session

## STATE OF TENNESSEE v. STEVEN JOHN CHROMIK, III

**Appeal from the Criminal Court for Davidson County**
**No. 2003-B-1153      Monte D. Watkins, Judge**

---

**No. M2004-01865-CCA-R9-CD - Filed May 6, 2005**

---

In this interlocutory appeal arising from the Davidson County Criminal Court's order suppressing certain statements and writings made by the defendant, Steven John Chromik, III, the state claims that the trial court erred in finding the defendant's statements and writings constituted inadmissible hearsay. The defendant contends that the trial court erred in denying his motion to suppress the statements and writings because of violation of his rights under the United States and Tennessee constitutions. We affirm the trial court's judgment concerning the defendant's constitutional claims but reverse its suppression of the defendant's statements on evidentiary grounds, and we remand the case for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Reversed, Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kimberly Fields Cooper, Assistant District Attorney General, for the appellant, State of Tennessee.

John R. Hellinger and Erik R. Herbert, Nashville, Tennessee, for the appellee, Steven John Chromik, III.

## OPINION

This case relates to the defendant's being charged with raping a Vanderbilt University student. At the motion to suppress hearing, Vanderbilt University Police Officer Chris Roark testified that he was working "bike patrol" on the night of April 6, 2003. He said that during his patrol, he received a radio call at approximately 5:30 a.m. of a reported sexual assault and that the suspect was traveling on foot toward Peabody Campus. He said a further report indicated that the defendant was the suspect. He said that his partner, Vanderbilt University Police Officer Walker,

determined the location of the defendant's dormitory and that they arrived at the dormitory at approximately 6:00 a.m. He said that when he arrived at the defendant's room, he identified himself as a police officer and ordered the defendant to open the door. He said that when the defendant did not open the door, he called the "Resident Advisor," (RA), to open the door. He said that the RA had a key to all the rooms in the dormitory.

Officer Roark testified that the defendant initially identified himself as someone else, that his demeanor was nonchalant, and that it appeared he had been assaulted recently. He said the defendant did not ask him or his partner why they were there. He said that the defendant did not have any difficulty in getting down from the top of his bunk bed, that he did not stumble around, and that he did not slur his speech. Officer Roark testified, however, that he did detect the odor of alcohol on the defendant but that it was not strong. He said the alcohol did not seem to affect the defendant's ability to understand him.

Officer Roark testified that he took the defendant into custody but that he did not inform him of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 471-75, 86 S. Ct. 1602, 1626-28 (1966). He said that after he handcuffed the defendant, he took him downstairs and placed him in a patrol car. He said the defendant had no problems walking while he escorted him to the patrol car. He said his encounter with the defendant lasted approximately twenty-five minutes. Officer Roark acknowledged that when he entered the defendant's room, he engaged in what could be considered an investigation of the defendant. Officer Roark conceded that in a prior administrative hearing, he had testified that the defendant "reeked" of alcohol.

Vanderbilt University Police Officer Joe Evans testified that he was working as a master patrol officer on the morning of April 6, 2003. He said he first came into contact with the defendant at police headquarters at approximately 6:30 a.m. Officer Evans said he proceeded to interview the defendant concerning the alleged rape. He said that during the interview, the defendant had no trouble understanding what was going on and was not slurring his words but did smell of alcohol. He said the defendant showed no obvious signs of intoxication. Officer Evans testified that he was in the interview room with the defendant for ten minutes but that he did not give him Miranda warnings.

Vanderbilt University Police Detective Richard Dean testified that he was called in to work at 6:30 a.m. on the morning of April 6, 2003. He said that when he arrived at police headquarters, he received details of the incident in question from the shift commander and proceeded to interview the defendant. He said that the interview was "one-on-one," that he read the defendant his Miranda rights before questioning him, and that the defendant orally waived his Miranda rights. He said that although he detected an odor of alcohol, the defendant did not exhibit any outward signs of intoxication. He said the defendant understood his Miranda rights and was responding to questions rapidly. He said that the defendant waived his right to remain silent and his right to counsel and that the defendant said he wanted to speak with him. Detective Dean conceded, however, that the defendant did not sign a written waiver of his Miranda rights and that the interview was not recorded by either audio or video equipment.

Detective Dean testified the defendant said that he had been at a birthday party, that he had gone to an upstairs bedroom, that he was in bed with the alleged victim, and that he did not have his clothes on. He said the defendant said that someone named Steve came upstairs and "beat him up, and threw him out of the apartment." Detective Dean said the defendant maintained that he had done nothing wrong. He said that at the end of the interview, he asked the defendant if he would like to write the alleged victim an apology. He said that the defendant answered in the affirmative and that the defendant wrote out an apology. Detective Dean testified the defendant's note read as follows: "I don't know what I did or why I did it, but I'm sorry, and I don't – I didn't mean harm or anything even though this . . . I'm sorry, I'm sorry. Stevie. P.S. I don't know who you are, but I'm sorry." Detective Dean testified that during the interview, the defendant kept stating, "This is a joke" and "I think it's funny." Detective Dean said the defendant seemed nonchalant during the interview process.

On cross-examination, Detective Dean acknowledged testifying in a prior proceeding concerning the defendant that the defendant was intoxicated when he interviewed him. Detective Dean acknowledged he did not take the time to conduct an objective test to determine if the defendant knowingly and voluntarily understood his rights before waiving them. He acknowledged that when he spoke to the defendant three days later, the defendant no longer thought everything was a joke.

The defendant testified that he was intoxicated when he met with Detective Dean. He said that he had been drinking on the night in question and that it had been to excess. He said he did not have a complete recollection of being at the police station. He said, however, he did recall meeting with Detective Dean. He said he did not remember Detective Dean reading him his Miranda rights. He said he wrote the apology note to the alleged victim because he was told that if he did, he would be allowed to leave. The defendant said that to him, intoxicated means drunk and that on the night in question he was very drunk.

After reviewing the evidence presented, the trial court found that the Vanderbilt Police Officers' actions did not violate the defendant's Fourth Amendment rights and that the defendant's note of apology and statements to Detective Dean did not violate his Fifth Amendment right against compulsory self-incrimination. However, the trial court determined, sua sponte, that

> There is also an issue under Rule 804 of the Tennessee Rules of Evidence (TRE 804). TRE 804 provides a hearsay exception for statements against penal interest where the declarant is unavailable. In this case, the defendant could become unavailable by definition "on the grounds of privilege from testifying concerning the subject matter of the declarant's statement." Should [the defendant] choose not to testify in his own defense at trial, he would be invoking his Fifth Amendment privilege against self-incrimination. Where the defendant is unavailable, the State could argue that the apology is admissible as a statement against penal interest.

However, even so, the apology the defendant wrote could not be admitted under such a hearsay exception because it is <u>not</u> a statement against interest. [The defendant] did not confess to committing the alleged crime. In fact, testimony reveals that in the apology, the defendant says, "I don't know what I did." Again, even if the apology is indeed a statement against interest, it cannot be used against the defendant at trial unless he takes the witness stand in his own defense.

Under Tennessee law as applied to the facts of this case, this Court holds . . . that the apology is not a statement against interest under Rule 804 of the Tennessee Rules of Evidence, and is thus not admissible under the Rule.

After the trial court's ruling, the defendant filed a "Motion for Reconsideration and Clarification." In response to the defendant's motion, the trial court amended its previous order and found

That except for testimony regarding the initial statement made by [the defendant] to Officer Chris Roark of the Vanderbilt University Police Department (VUPD) in which "he identified himself as somebody else," all other statements made to VUPD personnel are not admissible under Rule 804 of the Tennessee Rules of Evidence (TRE 804). TRE 804 provides a hearsay exception for statements against interest.

. . . .

With respect to testimony from VUPD personnel in which [the defendant] behaved nonchalantly, displayed an attitude of incredulity, or behaved as if his interview with VUPD personnel was a joke, testimony regarding such behaviors would not be admissible under Rule 803 of the Tennessee Rules of Evidence (TRE 803). TRE 803(2) and (3) provide hearsay exceptions for excited utterances and then existing mental, emotional, or physical conditions. The defendant's statements or behaviors would not be admissible under this Rule because they did not occur contemporaneously with the alleged incident.

On appeal, the state claims the trial court erred in granting the defendant's motion to suppress on grounds that the defendant's statements and letter of apology constitute inadmissible hearsay. The state argues (1) that the defendant's statements and letter of apology are admissible at trial over a hearsay objection as an admission of a party opponent, (2) that the defendant's statements to the investigating officers concerning his belief that the interrogation was a joke are also admissible at

trial over a hearsay objection as statements of the defendant's then existing state of mind, and (3) that the defendant's nonchalant attitude during the interview process was not hearsay and therefore the officers could testify to his demeanor as lay opinion testimony. The defendant contends that everything he said to the investigating officers or did in their presence should be suppressed because (1) the warrantless entry into his room violated his Fourth Amendment rights, and (2) he did not voluntarily, knowingly, or intelligently waive his right to remain silent or his right to counsel. The defendant does not argue, however, that the trial court's hearsay rulings were correct. In rebuttal, the state contends that the defendant's Fourth Amendment rights were not violated. Specifically the state asserts that exigent circumstances existed to justify the warrantless entry into the defendant's room and that the Vanderbilt University Officers obtained a valid consent to enter the defendant's room from the RA. The state further contends that even if the defendant's Fourth Amendment rights were violated, the exclusionary rule does not extend to the statements he made during interrogation and that the defendant's waiver of his right to remain silent and his right to counsel was voluntary, knowing, and intelligent.

## I. HEARSAY

We believe the trial court misapprehended the status of the defendant's statements and letter. Hearsay is an out-of-court statement offered in court "to prove the truth of the matter asserted." However, Rule 803(1.2), Tenn. R. Evid., provides

> Hearsay Exceptions.–The following are not excluded by the hearsay rule:
>
> . . . .
>
> (1.2) Admission by Party-Opponent.–A statement offered against a party that is (A) the party's own statement in either an individual or a representative capacity . . . .

Because it is not necessary that a statement be against interest when made by a party opponent to qualify under this hearsay exception, the defendant's statements, both written and oral, are admissible, subject, of course, to Rules 401 and 403, Tenn. R. Evid. See State v. Binion, 947 S.W.2d 867, 874 (Tenn. Crim. App. 1996); see also Neil P. Cohen et al., Tennessee Law of Evidence, § 8.06[3][c], at 8-41 (4th ed. 2000). Suppression of the defendant's statements and letter as hearsay was error.

## II. CONSTITUTIONAL ISSUES

### A. Seizure

The defendant contends that his statements and letter to Vanderbilt University Police should be suppressed as "fruit of the poisonous tree," because the officers illegally entered his room and seized him. The state argues that exigent circumstances existed to justify the entry, that valid

consent was obtained to enter the room and seize the defendant from the RA, and that even if the defendant's constitutional rights were violated, the exclusionary rule does not apply to the statements he made at the police station.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A similar guarantee is provided in Article 1, Section 7 of the Tennessee Constitution:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty.

The essence of these constitutional protections is "to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Downey, 945 S.W.2d 102, 106 (Tenn. 997) (quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)). Since an individual's expectation of privacy is nowhere higher than when in his or her own home, a "basic principle of Fourth Amendment law" is "that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980) (internal quotations omitted). Under the "fruit of the poisonous tree" doctrine, evidence that is obtained through exploitation of an unlawful search or seizure must be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963).

The prohibition against warrantless searches and seizures is subject only to a few specifically established and well-defined exceptions. See Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); State v. Tyler, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). The United States Supreme Court, holding that the constitution prohibits the warrantless entry into a suspect's home to make a felony arrest, has stated that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Payton, 445 U.S. at 590, 100 S. Ct. at 1382. Exigent circumstances exist "(1) when the officers [are] in hot pursuit of a fleeing suspect; (2) when the suspect represent[s] an immediate threat to the arresting officers or the public; and (3) when immediate police action [is] necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." Jones v. Lewis, 874 F.2d 1125, 1130 (6th Cir. 1989)). In addition, "law enforcement officers may also make a warrantless entry in an emergency to protect human life." State v. Robbie W. Fields, No.

E2004-00716-CCA-R3-CD, Bradley County, slip op. at 6 (Tenn. Crim. App. Jan. 7, 2005). We conclude that none of the aforementioned circumstances are applicable in this case. Specifically, the Vanderbilt University Officers were not in hot pursuit of the defendant. Indeed, at no time did an officer have sight of the defendant as he returned to his dorm room from the scene of the alleged crime. Therefore, this exception to the general warrant requirement does not justify the officers' warrantless entry into the defendant's room.

Another exception to the general warrant requirement is consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44 (1973); State v. Bartram, 925 S.W.2d 227, 230 (Tenn. 1996); State v. Jackson, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993). "The sufficiency of consent depends largely upon the facts and circumstances in a particular case." Id. In most circumstances valid consent exists when given "either by the individual whose property is searched or by a third party who possesses common authority over the premises." State v. Ellis, 89 S.W.3d 584, 592 (Tenn. Crim. App. 2000) (citations omitted). The Supreme Court has defined common authority as the

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

United States v. Matlock, 415 U.S. 164, 171 n.7, 94 S. Ct. 988, 993 n.7 (1974); see also Bartram, 925 S.W.2d at 231. This court has previously concluded that valid consent exists if (1) the third party in fact had common authority or (2) a reasonable person, given the facts and circumstances available to the police, would have concluded "that the consenting party had authority over the premises." Ellis, 89 S.W.3d at 593 (citing Illinois v. Rodriguez, 497 U.S. 177, 188-89, 110 S. Ct. 2793, 2801 (1990)).

Initially, we note that the trial court found the RA had authority to enter the defendant's room upon a showing of violations of university policy, citing State v. Burroughs, 926 S.W.2d 243 (Tenn. 1996), as authoritative and justifying the RA's entry into the defendant's room. We do not believe, however, that Burroughs supports such a conclusion in the present case. In Burroughs, the defendant was a student at a private college and a resident in the college's dormitory. Pursuant to a contract the defendant signed allowing a search of his room, an official from the college searched the defendant's room, seized cocaine, and turned the contraband over to the police, who initiated criminal proceedings against the defendant. Our supreme court held that because the official was a private actor not operating at the behest of the state, no state action was involved. Therefore, the defendant's Fourth Amendment rights were not violated. 926 S.W.2d at 244-46. In the present case, the RA merely opened the door, allowing Vanderbilt University Police to search the defendant's room and seize him, unquestionably state action.

When the police officers arrived at the defendant's room they did not enter and seize him until the RA was summoned to the room and gave his consent for the police to enter, opening the door for them. We note from the record that the contract which the defendant signed allowed for a search of his room upon substantial evidence of his violation of university policy. We conclude that the contractual language is sufficient to allow the RA to consent to a search under the circumstances presently under review.

In any event, we note that a Fourth Amendment violation would afford him no relief. In New York v. Harris, 495 U.S. 14, 110 S. Ct. 1640 (1990), the Court held that the exclusionary rule does not preclude the government from using a statement made by a defendant at a police station who had been arrested at his home in violation of the Fourth Amendment. "Where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of Payton." Harris, 495 U.S. at 21, 110 S. Ct. at 1644.

The Court's justification for not following the traditional exclusionary rule approach was based upon its conclusion that

> The penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve. In light of these principles, we decline to apply the exclusionary rule in this context because [it] was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects, like Harris, protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime.

Harris, 495 U.S. at 17, 21, 110 S. Ct. at 1642 (internal citations omitted); accord State v. Jenkins, 81 S.W.3d 252, 264-65 (Tenn. Crim. App. 2002) (holding an illegal arrest in a home does not bar introduction of statement taken outside the home under Fourth Amendment or article 1, section 7).

When the police arrived at the defendant's dormitory room, they had probable cause to arrest him. They had received information of a sexual assault from a victim alleging that the defendant was the perpetrator. Accordingly, the defendant would not be entitled to relief on this issue even if the officers had violated his rights under the Fourth Amendment or article 1, section 7.

### B. Defendant's Statements and Letter

The defendant contends that his statements and letter should be suppressed because they were taken in violation of his Fifth Amendment right against compulsory self-incrimination. He asserts that he was not given Miranda warnings and argues that even if he were given Miranda warnings, he was too intoxicated to knowingly and voluntarily waive his rights. The United States and

Tennessee Constitutions protect a suspect from "being compelled to give evidence against himself." State v. Berry, 141 S.W.3d 549, 576 (Tenn. 2004) (citing U.S. Const. amend. V; Tenn. Const. art. 1, § 9). If a suspect is in custody, the police must first inform him of his Fifth Amendment rights in order for his confession to be admissible as substantive evidence in the trial of the matter. See Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). Once informed of those rights, a suspect may voluntarily waive them and speak with the police or he may invoke his Miranda right against compulsory self-incrimination. Id. at 444-45, 86 S. Ct. at 1612; State v. Crump, 834 S.W.2d 265, 269 (Tenn. 1992), cert. denied, 113 S. Ct. 298 (1992). "The test of voluntariness for confessions under Article 1, § 9 [of the Tennessee Constitution] is broader and more protective of individual rights than the test of voluntariness under the Fifth Amendment." Id. at 268 (citing State v. Smith, 834 S.W.2d 915 (Tenn. 1992)). A reviewing court must consider the totality of the circumstances when ascertaining whether a suspect knowingly and voluntarily waived his Miranda rights. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997); State v. McCary, 119 S.W.3d 226, 251 (Tenn. Crim. App. 2003).

The trial court found that Detective Dean "properly informed the defendant of his Miranda rights prior to interrogating him," and that the defendant knowingly, voluntarily, and intelligently waived his Miranda rights. Concerning the issue of the defendant's intoxication, the court found that while the defendant

> had been drinking a great deal the night before the interrogation, and testified that he remembered "bits and pieces" of the interrogation with Det. Dean, he did recall meeting with the detective and he described the interview room with particularity. He also testified to writing the apology, and that Det. Dean "was pretty straightforward with [him]."

We conclude that the record does not preponderate against the trial court's finding that the defendant was properly informed of his rights and waived them knowingly and voluntarily. The defendant is not entitled to relief on this issue.

Based upon the foregoing and the record as a whole, we affirm the trial court's denial of the defendant's motion to suppress his statements made to Vanderbilt University Police as violations of his rights under the United States and Tennessee constitutions, but we reverse the trial court's judgment that the defendant's statements constitute inadmissible hearsay. We remand this case for further proceedings consistent with this opinion.

_____
JOSEPH M. TIPTON, JUDGE