IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2007

## STATE OF TENNESSEE v. JAMES DAVID JOHNSON

**Direct Appeal from the Circuit Court for Tipton County**
**Nos. 5132, 5221     Joseph H. Walker, III, Judge**

**No. W2006-01842-CCA-R3-CD  - Filed February 6, 2008**

The defendant, James David Johnson, was convicted of premeditated first degree murder; felony first degree murder; aggravated robbery, a Class B felony; and theft over $10,000, a Class C felony. The felony first degree murder conviction was merged with the premeditated first degree murder, and a life sentence was imposed. The defendant was sentenced to eighteen years as a multiple offender for aggravated robbery and to fifteen years as a career offender for theft over $10,000. The theft offense was set as concurrent to the aggravated robbery, but the two, together, were consecutive to the life sentence. This resulted in an effective sentence of life imprisonment plus eighteen years. On appeal, the defendant submits three issues: (1) the evidence was insufficient to support the convictions; (2) the trial court erred in failing to suppress the defendant's statements; and (3) the trial court erred in admitting hearsay testimony. After review, we affirm the convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Gary F. Antrican, District Public Defender; and Julie K. Pillow, Kari I. Weber, and W. Ray Glasgow, Assistant Public Defenders, for the appellant, James David Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; and D. Michael Dunavant, District Attorney General, for the appellee, State of Tennessee.

### OPINION

Florence Jean Hall, the seventy-three-year-old victim, was found dead in her garage on July 3, 2003. The victim owned several residential and commercial properties which she rented. The victim's purse was missing and was never recovered. Her son, Jack Hall, Jr., stated that on the third of the month the victim would have been collecting rental money and often would have one to ten thousand dollars cash in her purse. A diamond pendant and a diamond ring were the only jewelry

items known by the victim's family to have been removed. Jack Hall, Jr., estimated the value of the diamond ring was $25,000.

Dr. O. C. Smith, a forensic pathologist, testified that the victim died from multiple injuries. She suffered blunt trauma to the head and was strangled with a shirt used as a ligature. The ligature was left on the victim's neck.

Daryl Griggs, an employee of Hall's Rental, stated that the defendant had worked for the victim in the past. The victim had terminated the defendant in April of 2003.

The diamond from the victim's diamond ring was recovered from a jewelry store in Memphis. The owner of the store stated that the ring had been purchased in July 2003 for three hundred to four hundred dollars. The seller produced no identification and claimed the ring had been found.

The defendant was interviewed by officers on several occasions. During two of the interviews, the defendant admitted being at the scene of the murder but named two other individuals as the perpetrators. In both of these statements, the defendant admitted to acquiring possession of the victim's ring and selling it.

The defendant was questioned again on April 20, 2005, and admitted to his sole responsibility for the crimes. He stated that the victim caught him in the garage and slapped him. The defendant stated he choked the victim with a shirt, struck her four or five times, and then placed a plastic bag over her head. The defendant removed the ring from the victim's finger and took her purse. He stated the purse contained five hundred to six hundred dollars. He said his cousin pawned the ring in Memphis and gave him $300 afterward.

Sufficiency of Evidence

The defendant challenges the sufficiency of the evidence to convict as to all convictions. When an accused challenges the sufficiency of the convicting evidence, the standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004); see also Tenn. R. App. P. 13(e). "[T]he State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and an appellate court does not reweigh or re-evaluate the evidence. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003).

A jury verdict approved by the trial court accredits the State's witnesses and resolves all conflicts in the evidence in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

"Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict." State v. Thacker, 164 S.W.3d 208, 221 (Tenn. 2005). These rules are applicable to findings of guilt predicated upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The standard of review is the same for circumstantial evidence as direct evidence. State v. Vann, 976 S.W.2d 93, 111 (Tenn. 1998). On appeal, this court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Premeditated first degree murder is defined as "[a] premeditated and intentional killing of another." Tenn. Code Ann. § 39-13-202(a)(I) (2003). An act is premeditated if the act is "done after the exercise of reflection and judgment." Id. at (d).

> "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Id. The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. State v. Rosa, 996 S.W.2d 833, 837 (Tenn. Crim. App. 1999) (citing State v. Brown, 836 S.W.2d 530, 539 (Tenn. 1992)).

Felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, act of terrorism, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2).

"Aggravated robbery is robbery as defined in [Tennessee Code Annotated section] 39-13-401: (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it would be a deadly weapon; or (2) Where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402. "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401.

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

From our review of the evidence, we conclude that the jury was entirely rational and justified in convicting the defendant of premeditated first degree murder, felony first degree murder, aggravated robbery, and theft.

The defendant admitted going into the victim's garage with the intent of stealing a lawnmower. The defendant said he was confronted by the victim, who slapped him. The defendant choked the victim using a shirt, struck the victim in the head several times, and then choked her again. He then placed a plastic bag over the victim's head. The defendant stated he then removed the victim's ring and took her purse. The defendant told his cousin of these events, and the cousin sold the ring in Memphis. The defendant also provided certain details concerning the murder scene which had not been publicized. He admitted climbing into the truck bed to unplug the garage door. A dusty footprint was lifted from the bumper of the truck, which was consistent with the sole of the defendant's shoes, although not conclusive. The testimony of the forensic pathologist confirmed that a rolled shirt was still in place on the victim's neck and that she died from strangulation and blunt head injuries.

There are several non-exclusive factors that can be used to infer premeditation: a motive for the killing; the use of a deadly weapon upon an unarmed victim; the particular cruelty of a killing; the defendant's threats or declarations of intent to kill; the defendant's procurement of a weapon; any preparations to conceal the crime undertaken before the crime is committed; destruction or secretion of evidence of the killing; and a defendant's calmness after a killing. See State v. Davidson, 121 S.W.3d 600, 614 (Tenn. 2003); State v. Dellinger, 79 S.W.3d 458, 492 (Tenn. 2002); State v. Nichols, 24 S.W.3d 297, 302 (Tenn. 2000); State v. Nesbit, 978 S.W.2d 872, 898 (Tenn. 1998); State v. Bland, 958 S.W.2d 641, 660 (Tenn. 1997). Additional factors indicative of the existence of premeditation include a lack of provocation on the part of a victim and the defendant's failure to render aid to a victim. State v. Lewis, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000). Evidence of repeated blows is also relevant to establish premeditation. State v. Sims, 45 S.W.3d 1, 8 (Tenn. 2001).

There was sufficient evidence for the jury to find that the defendant committed the murder after the exercise of reflection and judgment. The defendant had recently been fired by the victim. The defendant struck her repeatedly and choked her at least twice, by his admission. The defendant then took time to place a plastic bag over the victim's head.

The defendant's entire course of action justified the convictions for felony first degree murder, aggravated robbery, and theft and satisfied the essential elements of each crime.

Defendant's Statements

In his second issue, the defendant contends that his statements given to officers were not voluntarily given, were the product of stress or fear, and were in response to promises of leniency. The trial court refused to suppress the defendant's statements after a hearing.

In reviewing a trial court's denial of a motion to suppress, this court must look to the evidence and facts accredited by the trial court which are most favorable to the State, as the prevailing party. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The appealing party bears the burden of demonstrating that the evidence preponderates against the trial court's findings. State v. Harts, 7 S.W.3d 78, 84 (Tenn. Crim. App. 1999). Findings of fact made by the trial judge on a motion to suppress are conclusive and are afforded the weight of a jury verdict, and this court may not set aside the trial court's decision unless the evidence contained within the record preponderates against the trial court's findings. State v. Jackson, 889 S.W.2d 219, 222 (Tenn. Crim. App. 1993). Questions of credibility of the witnesses, the weight and value of the evidence, and a resolution of conflicts in the evidence are matters entrusted to the trial judge. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

In Miranda v. Arizona, the United States Supreme Court held that the prosecution cannot admit a statement by the defendant stemming from "custodial interrogation" unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. 384 U.S. 436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966). The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

Before a custodial interrogation can occur, law enforcement must inform the person (a) he or she has the right to remain silent; (b) any statement made may be used as evidence against the person; (c) the person has the right to the presence of an attorney; and (d) if the person cannot afford an attorney, one will be appointed prior to questioning, if the person so desires. Miranda, 384 U.S. at 444. Unless these warnings are given, a subsequent statement by the individual is generally inadmissible as evidence. Stansbury v. California, 511 U.S. 318, 322, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994).

The accused must be adequately apprized of the right to remain silent and the consequences of deciding to abandon that right for the accused to effect a valid waiver. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994). The State bears the burden of proving a voluntary and knowing waiver by a preponderance of the evidence. State v. Bush, 942 S.W.2d 489, 500 (Tenn. 1997). The court must consider the totality of the circumstances when determining whether the State has met its burden of proof. Id.

Although the defendant made statements to officers on multiple occasions, only three of the statements were introduced as evidence by the State. These statements occurred on May 6, 2004; March 30, 2005; and April 20, 2005. The defendant was given Miranda warnings prior to each of these statements, and the defendant executed a written waiver of his rights. The trial court, at the motion to suppress, found that the statements were knowingly and voluntarily made without coercion or promises of leniency. The defendant contends he was under the influence of drugs but has failed to support this claim. Furthermore, intoxication does not render a confession invalid if the evidence shows that the defendant was capable of understanding and waiving his rights. State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985). The evidence does not preponderate against the trial

judge's findings at the suppression motion, and we conclude that the defendant's motion was properly denied.

Hearsay

In his final issue, the defendant claims that the trial court erred in overruling his objections to the testimony of the victim's son during the defendant's cross examination.

The subject testimony occurred while the defendant was questioning the victim's son as to whether he saw the victim on July 3, 2003. The verbatim colloquy was as follows:

Q.      You did see her that day?
A.      No, I didn't see her.
Q.      I thought you said you just went and saw her that day?
A.      No. I went by there to see her. She wasn't there.
Q.      Okay. Can you tell me about what time that was?
A.      It would seem like to me – well, she had called me, I believe it was two nights before, and told me he had came over to her house --
Ms. Pillow:      Object to hearsay.
A.      – at –
Mr. Glasgow:      Objection, Your Honor.
A.      – six o'clock that morning –
The Court:      Restate another question, please.
Q.      Can you just tell me what time you went by the house on July 3rd?
A.      It was about one o'clock.
Q.      In the afternoon?
A.      Uh-huh.
Q.      And you said you had a treatment two days prior to that?
A.      Uh-huh.
Q.      Was there any particular reason you went by?
A.      Well, she had told me he had caught her outside and --
Q.      It's hearsay again. You can't testify to what she told you?
A.      Well, you said why did I go by.
Q.      I just asked you why you went by.
A.      That was the reason why.
Q.      Because she called you?
A.      She called me and told me he had been over there threatening her. I wanted to go by and see –
Ms. Pillow:      Objection, You Honor.
Mr. Glasgow:      Objection, Your Honor.
Ms. Pillow:      Hearsay.
A.      – how it was.
Mr. Glasgow:      Move to strike.
The Court:      The Court will allow the response. State another question, please.

-6-

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial of hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible at trial except as provided by the rules or otherwise by law. Tenn. R. Evid. 802.

A corrective instruction by the trial court to disregard the witness' testimony as to the victim's statements would have been appropriate. It should also be noted that the defendant, through his questioning, invited the most egregious of the hearsay statements. A litigant is not entitled to relief for the natural consequences of his own neglect or misconduct. State v. Robinson, 146 S.W.3d 469, 493 (Tenn. 2004). The failure to take corrective action was harmless error in light of the overwhelming evidence of the defendant's guilt. The defendant is not entitled to relief on this issue.

Conclusion

After review, the convictions are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE