# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 10, 2011

## STATE OF TENNESSEE v. ANTHONY BERNARD GARRETT

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3084    Steve Dozier, Judge**

_____

**No. M2010-01722-CCA-R3-CD - Filed December 20, 2011**

_____

A Davidson County jury convicted the Defendant, Anthony Bernard Garrett, of simple possession or casual exchange of cocaine, fourth offense, and resisting arrest, and the trial court sentenced him to an effective sentence of six years. On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction for resisting arrest; and (2) the trial court erred when it denied his motion to suppress. After a thorough review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right ; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Emma Rae Tennent (on appeal), and Chase Smith (at trial), Nashville, Tennessee, for the appellant, Anthony Bernard Garrett.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from police officers' search of the Defendant, during which they found cocaine in the front pocket of his pants.

#### A. Motion to Suppress

The Defendant filed a motion to suppress the evidence found by the officers during the search. At the hearing on that motion to suppress, the follow evidence was presented: Officer Matthew Grindstaff, with the Metropolitan Nashville Police Department, testified that on March 27, 2008, he and other officers went to the Hallmark Inn located on West Trinity Lane in Nashville. He explained that there were often people in the parking lot of the Inn who did not have rooms, and the Inn's management had asked police officers to remove these people for trespassing.

Officer Grindstaff said he was driving through the parking lot of the Inn when he saw a group of men standing next to a pick-up truck. He noticed the "strong odor of marijuana coming from the group." Officer Grindstaff said he got out of his patrol car and spoke with the men, who initially told him that someone had just walked by smoking marijuana. The officer said, "I asked the [D]efendant for consent to search, he g[a]ve consent to search." When searching the Defendant, the officer felt something in his front pocket that he believed to be crack cocaine. As soon as the officer grabbed the substance, the Defendant started to resist. The officer had to be assisted by other officers in order to place the Defendant's hands behind his back, and get him into custody and finish the search. The officer then recovered from the Defendant's front pocket a dollar bill with multiple white rocks, which field tested positive for cocaine.

On cross-examination, the officer agreed that there were several men standing around the pick-up truck when he arrived. He said he did not see any of the men smoking, but, after he arrested the Defendant and gave the Defendant Miranda warnings, the Defendant admitted that he had smoked marijuana. The Defendant's admission confirmed the officer's suspicions, which were based upon the strong odor of marijuana that was emanating from the Defendant. Officer Grindstaff agreed that no weapon or drugs were found on the Defendant when the Defendant was first searched. Officer Grindstaff then searched the Defendant a second time during which he found the crack cocaine.

The Defendant testified that, in March 2008, he was staying at the Hallmark Inn. He said that earlier in the day, before his arrest, he had gotten off work and returned to the Inn with one of his employees and a friend. His friend was bringing him some food, and the men congregated near a truck, talking. The Defendant said "all of the sudden" five or six police cars pulled up around them. Officer Grindstaff jumped out of his car and said the officers were going to search the men, and the officers started patting down all of the men. The officers searched the Defendant for about ten minutes. The Defendant said the officers obtained identification for all of the men and then asked the Defendant if he lived at the Inn. The Defendant testified he told the officers he lived in room 139, immediately after which the officer began "patting on him." The Defendant said he never gave the officer consent to search him and he never admitted to smoking marijuana.

-2-

On cross-examination, the Defendant denied smoking marijuana and testified that he did not know why he smelled like marijuana. He said the truck he was standing near belonged to his friend, Sammy Hill, who did not live at the Inn. Hill had only come to the Inn to bring the Defendant food. The Defendant maintained he never gave Officer Grindstaff consent to search him and that he never spoke to Officer Grindstaff at all before the search. He also denied resisting arrest. The Defendant agreed that he had several previous felony convictions, including six burglary convictions, and that, also, while he was on bond for this case, he was arrested for another drug-related felony.

Based upon this evidence, and the arguments of counsel, the trial court denied the Defendant's motion to suppress. In so doing, it found:

> [The Defendant's] testimony does differ quite a bit with the officer's in that I would have to, in the Court's opinion, find that Officer Grindstaff is inaccurate about smelling marijuana because there was none being smoked, or second inaccurate about the statement of the [D]efendant admitting smoking marijuana earlier in the evening. And thirdly inaccurate about [the Defendant] giv[ing] consent. I just don't find that that has occurred in that Officer Grindstaff would perjur[e] himself at the time that the warrants are signed, which those statements are there as well at the time of [the Defendant's arrest] over a year ago and here today.
>
> So I do credit the officer[']s testimony about smelling marijuana, about [the Defendant] smoking marijuana earlier, but the important issue here for this suppression motion would be the fact that [the Defendant] gives consent. I mean, . . . if this truly is a second search, [t]he [Defendant] would have the ability to say I don't consent to the search and then we could determine whether there was additional probable cause for this alleged second search. He would have, under this voluntary encounter with officer Grindstaff, the right to say I'm leaving.
>
> But as I've stated I do credit the officer's testimony in that consent was given and that makes that a voluntary consensual search where probable cause is not needed.

**B. Trial**

The Defendant was then tried on the charges of possession of cocaine and resisting arrest. At his trial, the parties presented the following evidence: Matthew Grindstaff, with the Metropolitan Nashville Police Department testified that on March 27, 2008, at around

7:26 p.m., he worked in a unit assigned to high-crime areas. The officer was ordered to go to the Hallmark Inn where there was typically a high volume of drug use and drug-related problems. As he drove through the parking lot of the Inn, he saw a group of six people, including the Defendant, all standing around a truck. The officer smelled marijuana "coming from the group," so he parked his car and approached the group.

Officer Grindstaff testified that he told the group that it smelled like marijuana and asked if anyone had been smoking. The group told him that it was not anyone in their group but that someone had walked by smoking marijuana. Officer Grindstaff smelled the odor of marijuana most strongly on the Defendant, and he asked the Defendant if he could search him. The Defendant gave him consent, and the officer began patting down the Defendant. When the officer felt a rock-like substance in the Defendant's pocket, that the officer believed was crack cocaine, the Defendant began to resist. The officer said other officers, including Officer King, had to assist him in "physically restrain[ing]" the Defendant so the officer could complete the search. During the completion of the search, Officer Grindstaff found a dollar bill folded around a yellow rock-like substance located inside the Defendant's "watch pocket." The yellow substance field tested positive for crack cocaine.

Officer Grindstaff testified that, after the substance returned positive for cocaine, he offered the Defendant his Miranda warnings. He then spoke with the Defendant, who admitted that he had smoked marijuana earlier. Inside the truck parked nearby, officers found "loose" marijuana. The officer said he then arrested the Defendant.

On cross-examination, Officer Grindstaff testified that another officer, Officer Douglas, rode with him while the two were on patrol. When the first arrived at the scene, Officer Michael Warren searched the Defendant and did not find anything. He explained that Officer Warren was "in training" and that it was "not uncommon for somebody that's in training to . . . miss narcotics." Officer Grindstaff said that the Defendant became increasingly nervous and, based on the officer's experience, he believed that the Defendant possessed drugs. The officer maintained that the Defendant gave him consent to search him and that the Defendant could have, but did not, stop the consent. Officer Grindstaff testified that the Defendant was not "stopping consent" when the Defendant grabbed his hand; rather, the Defendant was trying at that point to "get away." Officer Grindstaff agreed that another officer's report about the arrest indicated that the cocaine was found in a clear plastic bag, which was an error.

Isaac Martinez, an officer with the property and evidence division of the Metropolitan Nashville Police Department, testified that he received the evidence in this case and sealed the evidence with non-tampering tape. He then sent the evidence to the laboratory at the Tennessee Bureau of Investigation ("TBI") to be tested. On cross-examination, Officer

-4-

Martinez testified that the property was checked in by Officer Douglas. Officer Martinez did not physically see Officer Douglas check in the property, as Officer Douglas deposited the property in the night safe.

Jennifer Gillis, an agent with the TBI Crime Laboratory, testified that she received the evidence in this case and placed it in the TBI vault. Her records indicated that Donna Flowers Jacobson was the agent who tested the substance that police submitted for analysis. Agent Jacobson, a TBI forensic chemist, testified that she tested the evidence in this case and determined it was 0.6 grams of cocaine.

Michael Warren, with the Metropolitan Nashville Police Department, testified that he was present when officers arrested the Defendant. Officer Warren said that he was in training at the time and that he performed a search of the Defendant. After Officer Warren searched the Defendant, Officer Grindstaff searched the Defendant while Officer Warren observed. Officer Warren recalled that Officer Grindstaff located a white substance in the Defendant's "coin watch" pocket. At that point, the Defendant started resisting, so officers handcuffed the Defendant.

Based upon this evidence, the jury convicted the Defendant of simple possession and resisting arrest. The trial court then explained to the jury that the State was also alleging that the Defendant had committed the offense of possession on prior occasions. The State read the indictment, in which it alleged that this was the Defendant's fourth offense for possession. The State then presented certified copies of the Defendant's previous convictions. After deliberating, the jury convicted the Defendant of simple possession, fourth offense. The trial court sentenced the Defendant, a Career Offender, to a six-year effective sentence.

## II. Analysis

On appeal, the Defendant contends that: (1) the evidence is insufficient to support his conviction of resisting arrest; and (2) the trial court erred when it denied his motion to suppress.

## B. Sufficiency of Evidence

The Defendant contends the evidence is insufficient to sustain his conviction for resisting arrest. He notes that the statute under which he was charged lists several separate instances during which it is a crime to resist (1) a stop, (2) a frisk, (3) a halt, (4) an arrest, or (5) a search. He states that the use of the conjunction "or" necessitates the State making a choice when indicting the Defendant. He asserts that the jury was instructed that they must

find that the Defendant resisted "an arrest" only, which he says is not supported by the evidence. The State counters that the evidence presented did not fatally vary from the indictment and that the evidence was sufficient to support his conviction. We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *See also Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

In this case, the indictment charged that the Defendant resisted an arrest, and the jury was instructed that the Defendant was charged with resisting an arrest. A person commits the offense of preventing or obstructing an arrest by intentionally preventing, by force, a person known to be a law enforcement officer from making an arrest. T.C.A. § 39-16-602 (2010). The evidence presented at trial proved that Officer Grindstaff, along with other officers, drove to the Hallmark Inn, an area they knew to have a high quantity of drug-related activity. Officer Grindstaff smelled the odor of marijuana coming from the men, and stopped to inquire about this smell. The Defendant gave Officer Warren consent to search him, and Officer Warren found nothing illegal during this search. The officers then obtained the Defendant's identification, and Officer Grindstaff again searched the Defendant. During this search, Officer Grindstaff felt what he believed to be crack cocaine in the Defendant's pocket. The Defendant began resisting. Officer Warren testified that the Defendant was resisting while multiple officers participated in subduing the Defendant to handcuff him, actions by which they were placing him under arrest. This evidence is sufficient to sustain the Defendant's conviction for resisting arrest, and he is not entitled to relief on this issue.

## A. Motion to Suppress

The Defendant cites two reasons that the trial court erred when it denied his motion to suppress. First, the Defendant contends that his alleged consent was "gained in exploitation of an unlawful detention that preceded the alleged grant of consent." Further, he contends that the State failed to demonstrate that the consent was sufficiently attenuated from the prior unlawful detention. The State counters that the officers had probable cause to believe that a crime was being committed when they smelled marijuana coming from the group of men. Therefore, the search was legal. The State further asserts that the search was legal based upon the Defendant's consent.

The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in *State v. Odom*, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." *Id.* at 23; *see State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *Odom*, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Id.* However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating

that the evidence preponderates against the trial court's findings. *Odom*, 928 S.W.2d at 22-23; *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures, and "article 1, section 7 [of the Tennessee Constitution] is identical in intent and purpose with the Fourth Amendment." *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857, 860 (1968)). Under these provisions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result of such a search or seizure should be suppressed unless the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. *Yeargan*, 958 S.W.2d at 629.

As stated, there are recognized exceptions to the warrant rule, and the warrantless search of the defendant's person may be valid if the search falls within one of the exceptions. The most common of these exceptions include: (1) a stop and frisk situation; (2) a search incident to a lawful arrest; (3) consent to search; (4) probable cause to search with exigent circumstances; (5) hot pursuit; and (6) plain view. *State v. Day*, 263 S.W.3d 891, 901 n. 9 (Tenn. 2008) (citations omitted). Our Supreme Court recently reminded us that the exceptions must remain "well-delineated," "jealously and carefully drawn," and "narrowly" defined. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011) (citations omitted).

Consent voluntarily and understandingly given is an exception to the constitutional requirement of a search warrant. *State v. Ingram*, 331 S.W.3d 746, 760 (Tenn. 2011) (discussing consent to search a person's residence). The consent, to be valid, must be "unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *State v. Berrios*, 235 S.W.3d 99, 109 (Tenn. 2007) (quoting *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998) (internal quotation marks omitted)). "Whether an individual voluntarily consents to a search is a question of fact to be determined from the totality of the circumstances." *Id.* The sufficiency of consent depends largely upon the facts and circumstances in a particular case. *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn. 1993). The burden is on the prosecution to prove that consent was freely and voluntarily given. *State v. Jackson*, 889 S.W.2d 219, 221 (Tenn. Crim. App. 1993).

From our review of the record, we find that it contains ample evidence, when viewed in the light most favorable to the party prevailing in the trial court, to support that court's ruling as to each search. The officers stopped where the Defendant was standing with several other people after the officers smelled the odor of marijuana coming from the group. Officer Warren then asked the Defendant for consent to search him, and the Defendant granted his consent. Officer Warren, who was an officer in training at the time, found nothing of interest during this search. Officer Grindstaff noticed the Defendant's

increasingly nervous demeanor as they were speaking. Officer Grindstaff testified multiple times that he asked the Defendant for consent, and the Defendant granted Officer Grindstaff consent to search him.

The Defendant contends that between Officer Warren's search and Officer Grindstaff's search, the officers asked for his identification and that this request represented "an unlawful *further* detention not supported by further reasonable suspicion or probable cause." The Defendant testified at the suppression hearing that he consented to the first search only and that the officers then spoke to him further, asked for his identification, and searched him again. This testimony contradicts the testimony of Officer Grindstaff, who said that the Defendant consented to Officer Grindstaff's request to search the Defendant. Both officers indicated that the searches occurred in close succession, and neither indicated that the Defendant's identification was obtained between the two searches. The trial court accredited Officer Grindstaff's testimony. Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. *See Odom*, 928 S.W.2d at 23

In this case, Officer Grindstaff did not find the crack cocaine until after the Defendant was placed in handcuffs and, thereby, arrested. Courts have designated three categories of police-citizen interaction: (1) a full-scale arrest, which must be supported by probable cause, *see Brown v. Illinois*, 422 U.S. 590, 598 (1975); *State v. Ferrante*, 269 S.W.3d 908, 913 (Tenn. 2008); (2) a brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, *see Terry v. Ohio*, 392 U.S. 1, 27 (1968); *State v. Williams*, 185 S.W.3d 311, 315 (Tenn. 2006); and (3) a brief police-citizen encounter that requires no objective justification, *see Florida v. Bostick*, 501 U.S. 429, 434 (1991); *State v. Daniel*, 12 S.W.3d 420, 424 (Tenn. 2000). An arrest is "the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody." *West v. State*, 425 S.W.2d 602, 605 (Tenn. 1968). A law enforcement officer may, incident to a lawful arrest, search the person arrested and the immediate surrounding area. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999). A search incident to a lawful arrest is justified by the need to protect the arresting officer and others from harm and the need to prevent the concealment or destruction of evidence. *See Knowles v. Iowa*, 525 U.S. 113, 116 (1998); *Crutcher*, 989 S.W.2d at 300.

In *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009), our Supreme Court explained:

> In order to justify a warrantless search as incident to a lawful arrest, four conditions must be met: (1) the arresting officer must have probable cause to

believe that the defendant had engaged or was engaging in illegal activity . . .; (2) the probable cause must attach to an offense for which a full custodial arrest is permitted-i.e., there must be statutory grounds for a warrantless arrest . . .; (3) the arrest must be consummated either prior to or contemporaneously with the search . . .; (4) the search must be incident to, not the cause of, the arrest.

*Id.* (internal citations omitted).

As to the first requirement, "[w]hether probable cause is present depends upon whether the facts and circumstances and reliable information known to the police officer at the time of the arrest 'were sufficient to warrant a prudent man in believing that the [individual] had committed an offense.'" *State v. Downey*, 945 S.W.2d 102, 106 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). As to the second requirement, Tennessee Code Annotated section 40-7-103(a)(3) provides that a police officer may arrest a person without a warrant "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested has committed the felony."

In this case, Officer Grindstaff smelled the odor of marijuana emanating from the Defendant. The Defendant was in an area known by officers to be laden with drug users. The officer then obtained the Defendant's consent to search the Defendant, and, during his search, the officer felt what he believed to be crack cocaine in the Defendant's pocket. The Defendant then began to resist the officer's efforts to continue the search of the Defendant's person. Because these facts and circumstances caused the officer to believe the Defendant was engaging in unlawful activity, he had the requisite probable cause to arrest the Defendant. Therefore, the search, during which he discovered the crack cocaine, was incident to this lawful arrest. We conclude that the trial court did not err when it denied the Defendant's motion to suppress, and he is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

-10-